JUSTICE McDADE delivered the judgment of the court, with opinion. Justice O’Brien concurred in the judgment and opinion. Justice Schmidt dissented, with opinion. OPINION The State charged defendant, Dennis A. Hackett, with aggravated driving under the influence and aggravated driving while license revoked. The circuit court of Will County granted defendant’s motion to quash arrest and to suppress evidence on the grounds police lacked probable cause to stop defendant’s vehicle. For the following reasons, we affirm. BACKGROUND At the hearing on defendant’s motion to quash arrest and suppress evidence, Deputy Michael Blouin of the Will County sheriff’s police testified that he was driving his unmarked police vehicle northbound on Briggs Street near Maple in Will County when he observed defendant’s vehicle traveling north on Briggs directly in front of him. Blouin described Briggs as a straight, four-lane roadway with two lanes of northbound traffic and two lanes of southbound traffic. The north and south lanes are marked by a divider and the two northbound lanes of traffic are divided by black and white stripes. Blouin first observed defendant’s vehicle in the right-hand northbound lane of traffic. Defendant crossed into the left-hand northbound lane and Blouin maneuvered his vehicle to follow behind defendant. Blouin testified that after entering the left-hand northbound lane, he observed defendant’s vehicle move to the right. Blouin testified that defendant’s vehicle’s right-side tires crossed the black-and-white-striped lane divider between the two northbound lanes of traffic on Briggs. Defendant’s vehicle then moved back into the left-hand lane. Blouin testified that five seconds later, defendant’s right-side tires again crossed the black-and-white-striped lane divider. Blouin could not recall how far defendant’s vehicle crossed into the right-hand lane of northbound traffic on Briggs. Blouin stated that defendant’s tires “slightly” crossed the lane divider. Blouin testified that both times, defendant’s vehicle “barely” went over the black-and-white-striped lane divider and that both times, defendant’s tires crossed the line for a matter of seconds. Based on his observations of defendant’s vehicle crossing the lane divider between the two northbound lanes of traffic on Briggs, Deputy Blouin decided to stop defendant’s vehicle for a traffic violation. Blouin testified that he did not stop defendant’s vehicle after the first time he observed defendant’s vehicle cross the lane divider but that he did decide to stop defendant after defendant “swerved a second time” because, in his opinion, if a vehicle “swerves” twice there is usually a problem with the driving. Blouin did not, however, stop defendant immediately after he “swerved a second time.” Rather, he followed him. While Blouin did not specifically recall Hackett’s turn indicators flashing or his stopping for lights, he testified that had he seen violations, he would have ticketed defendant for them. Thus, the evidence supports finding that after defendant’s two momentary swerves Blouin continued to follow him while defendant, without committing any traffic violation, negotiated (1) the move into the left turn lane, (2) two left turns, and (3) compliance with the laws concerning lane usage, speed limit, turn signals, and traffic signals. ANALYSIS Following the hearing on the motion, the trial court granted defendant’s motion to quash arrest and suppress evidence. “On appeal, a trial court’s factual findings concerning a motion to suppress will be upheld unless they are against the manifest weight of the evidence. [Citation.] The ultimate decision, however, concerning whether the evidence should have been suppressed is a question of law, which we review de novo. [Citation.] A peace officer may conduct a lawful traffic stop based on probable cause that the driver of the vehicle has committed a traffic violation. [Citation.]” People v. Matous, 381 Ill. App. 3d 918, 921-22 (2008) (citing Illinois v. Caballes, 543 U.S. 405 (2005)). The State argues that Blouin had probable cause to believe that defendant violated section 11 — 709(a) of the Illinois Vehicle Code (Code) (625 ILCS 5/11 — 709(a) (West 2006)). “Whenever any roadway has been divided into 2 or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply. (a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.” 625 ILCS 5/11 — 709(a) (West 2006). Defendant argues, based on his testimony, that in the area he was driving, Briggs is in poor condition and that he may have been taking evasive action to avoid potholes. The State argues that Blouin testified that he did not see any potholes or obstructions that would cause a driver to deviate from a lane of traffic. The State argues that absent obstructions that would cause a driver to deviate from a lane of traffic, an officer’s observation of a vehicle crossing the lane divider provides the officer with grounds for a traffic stop based on a violation of section 11 — 709(a). In People v. Halsall, 178 Ill. App. 3d 617, 618 (1989), the officer testified that he observed the defendant’s vehicle traveling on the left-hand side of the road. The car slowly drifted into the right lane. The defendant in that case drove his vehicle once across the center line and, after increasing his speed to an estimated 70 miles per hour, crossed the center line two more times. The testimony in that case was that when the defendant crossed the center line, approximately one-half of his car was over the line. Halsall, 178 Ill. App. 3d at 618. This court found that there was no evidence that when the defendant in Halsall moved outside of his lane he endangered himself, pedestrians, or other vehicles. Based on that finding, this court held that “the State failed to prove that when the defendant moved outside of his lane he did so without first determining that the movement could be made safely” (Halsall, 178 Ill. App. 3d at 619) and reversed the judgment of conviction for improper lane usage (Halsall, 178 Ill. App. 3d at 620). See also People v. Albright, 251 Ill. App. 3d 341, 343 (1993) (“This court has held that improper lane usage does not occur unless the defendant endangers himself, pedestrians, or other vehicles when he moves out of his lane of traffic”). The driving in both Halsall and Albright was potentially more dangerous than defendant’s driving in the case before us now. Blouin provided no testimony concerning other vehicles or pedestrians on Briggs at the time he observed defendant’s driving. Blouin could not testify how far defendant’s tires crossed the dividing line. By contrast, in Albright, the defendant crossed the line on the right side by at least a tire width on three separate occasions. Albright, 251 Ill. App. 3d at 342. Even were we to assume the presence of vehicles or pedestrians, Blouin admitted that defendant’s encroachment into another lane of traffic was slight and brief, lasting a total of mere seconds. Thus, under Halsall and Albright, we would affirm the trial court’s judgment that Blouin did not have probable cause to believe that defendant had committed a traffic violation and affirm the order granting defendant’s motion to quash arrest. The questions we are confronted with are (1) whether our decisions in those cases remain valid following the supreme court’s decision in People v. Smith, 172 Ill. 2d 289, 297 (1996), and (2) whether Smith requires reversal of the trial court in the instant case. In Smith, the defendant was observed by a police officer leaving a tavern, getting in his car and driving away. The officer, suspecting impairment, followed defendant as he drove on a four-lane, two-way street with a fifth lane in the center northbound and southbound for turning. The officer observed the driver’s side wheels of the defendant’s car cross over the lane line dividing the left lane from the center turn lane by at least six inches and remain over the lane line for approximately 100 to 150 yards — the length of 1 to 1½ football fields. A short time later, the defendant crossed over the lane line dividing the left lane from the right lane by approximately six inches for 150 to 200 yards. Smith, 172 Ill. 2d at 293. Thus, the defendant in Smith was driving significant distances in all three lanes of traffic— sometimes with his vehicle in the left and right lanes and sometimes in the left and center turn lanes. The police officer testified that the defendant did not endanger any other vehicles or persons when he deviated across the lane lines and verified that the defendant never completely left the center lane in which he was traveling. Smith, 172 Ill. 2d at 293. The defendant in Smith argued that a violation of section 11— 709(a) does not occur when a motorist momentarily crosses over a lane line, but occurs only when a motorist endangers others while moving from a lane of traffic. Smith, 172 Ill. 2d at 296. Our supreme court held that “[t]he plain language of the statute establishes two separate requirements for lane usage. First, a motorist must drive a vehicle as nearly as practicable entirely within one lane. Second, a motorist may not move a vehicle from a lane of traffic until the motorist has determined that the movement can be safely made.” (Emphasis added.) Smith, 172 Ill. 2d at 296-97. The court concluded that “[i]t follows that when a motorist crosses over a lane line and is not driving as nearly as practicable within one lane, the motorist has violated the statute.” (Emphasis added.) Smith, 172 Ill. 2d at 297. In light of this language in Smith, it seems clear that our earlier decisions in Halsall and Albright would no longer be valid. In both of those cases, the drivers had encroached significantly into a second lane and had proceeded an appreciable distance in two lanes. Turning to the question of whether Smith requires reversal of the trial court in the instant case, we do not read Smith as holding that any time a motorist veers momentarily and minimally over a lane line he or she is driving in more than one lane of traffic. There are too many innocent circumstances that might cause a motorist to momentarily and inadvertently inch across a lane divider to find that such action, without more creates probable cause to arrest. Based on the evidence in the instant record, we cannot find that any police officer in Blouin’s position could have reasonably believed that defendant was driving in more than one lane within the meaning of the statute and therefore committed the traffic violation for which he was stopped. “Where a traffic stop is based upon a mistake of law, it is unconstitutional. However, this may not resolve the issue. An otherwise improper stop based on a mistake of law may be found reasonable and constitutional if ‘the facts known to [the officer] raised a reasonable suspicion that the defendant was in fact violating the law as written.’ [Citation.] A police officer may stop a vehicle where he has reasonable suspicion to believe a driver is violating the Vehicle Code. [Citation.] Reasonable suspicion exists where an officer possesses specific, articulable facts that, when combined with rational inferences derived from those facts, give rise to a belief the driver is committing a traffic violation.” People v. Mott, 389 Ill. App. 3d 539, 543-44 (2009). First, Blouin provided no testimony from which to find that an officer in his position could reasonably believe that defendant engaged in improper lane usage. We fully accept and apply the supreme court’s finding that section 11 — 709(a) creates “two separate requirements for lane usage” including the independent requirement that “a motorist must drive *** as nearly as practicable entirely within one lane.” Smith, 172 Ill. 2d at 296-97. We construe Smith, we believe properly and consistently with the supreme court’s intent, to apply to situations like the one presented to the court in that case, where the driver of the vehicle actually drives for some reasonably appreciable distance in more than one lane of traffic. Our reading of Smith is supported by the supreme court’s own language. It specifically held that “[o]nce [the officer] saw [the] defendant cross over a lane line and drive in two lanes of traffic, [he] had probable cause to arrest [the] defendant for a violation of the Code.” (Emphasis added.) Smith, 172 Ill. 2d at 297. We do recognize and take note that the supreme court did not specify how far a vehicle must encroach a second lane of traffic or how long a vehicle must travel in two lanes of traffic to establish probable cause to arrest the driver for a violation of the Code. To answer that question, we turn to the holding in Smith — again, in an effort simply to be consistent with the language the supreme court chose in its judgment. Based entirely on what we reasonably believe the supreme court intended by its own language in its judgment in Smith, we must find that the court would hold that probable cause exists to find that a driver has failed to drive “as nearly as practicable entirely within one lane” when “a reasonable, prudent man in possession of the knowledge of the arresting officer would believe that [the] offense has been committed.” Smith, 172 Ill. 2d at 297, citing People v. Robinson, 62 Ill. 2d 273, 276 (1976). In this case, by Blouin’s own admission, defendant’s tires only slightly crossed the lane divider for mere seconds before defendant continued to operate his vehicle entirely in the left-hand lane of traffic. Instructive and in stark contrast is Smith, where the defendant drove with his wheels straddling the lane dividers by six inches on opposite sides of the street on two separate occasions, effectively driving in three lanes of traffic for approximately 150 yards each time. With regard to the second requirement of the statute, nothing in Blouin’s testimony provides any bases to find that if defendant did change from the left lane of traffic to the right, however briefly, he did not do so without first determining that it was safe. The evidence does not provide grounds upon which to find that defendant’s driving endangered himself, pedestrians, or other vehicles at any time. Thus, we conclude that Officer Blouin lacked probable cause to stop defendant for a violation of section 11 — 709(a). “An officer may conduct a Terry traffic stop if the officer has a reasonable, articulable suspicion that *** (3) the vehicle *** is subject to seizure for violation of a law.” People v. Matous, 381 Ill. App. 3d 918, 922 (2008). The violation of law for which Blouin stopped defendant did not occur, and no police officer in Blouin’s position could have reasonably believed that the violation occurred. Accordingly, we would also find that the facts and circumstances surrounding the traffic stop did not provide a reasonable, articulable suspicion to stop defendant based on Blouin’s stated reason of a violation of section 11 — 709(a). We find that Smith does not compel a different result. In so holding, we acknowledge that Hackett was drunk and the confirmation of his inebriation was the basis for his motion to suppress, which the trial court granted. That fact should not, however, drive our construction of the statute. Accordingly, we hold that the trial court properly granted defendant’s motion to quash arrest and suppress evidence. Contrary to the dissent’s implication, our decision is not based on whether or not defendant swerved to avoid a pothole. Our decision is based on our finding that Blouin was mistaken in his belief that defendant’s driving violated the law in question. The dissent[1] asserts that “[c]learly, the officer had probable cause to stop the defendant for improper lane usage.” 406 Ill. App. 3d at 221. We acknowledge the attractiveness of the dissent’s legal “conclusion” given that, literally, when one’s left tires are in the left lane and right tires are in the right lane, however slightly or briefly, one is not entirely in a single lane of traffic. However, we disagree with the dissent’s conclusion that Smith held that merely permitting one’s tires to briefly cross the center line is a per se violation of the statute because one is not driving “as nearly as practicable entirely within one lane” or that such action constitutes driving in two lanes of traffic within the meaning of the improper lane usage statute. Thus, we clarify that our finding is not that Blouin provided no testimony from which to find that all parts of defendant’s vehicle were not at all times physically within a single lane of traffic, but rather that Blouin provided no testimony from which to find that an officer in his position could reasonably believe that defendant was actually driving in two lanes and was therefore engaged in improper lane usage in violation of the statute. Based on Blouin’s testimony and consistent with Smith, we hold that the trial court properly granted defendant’s motion to quash arrest and suppress evidence. CONCLUSION The circuit court of Will County’s order is affirmed. Affirmed. The dissent, typically and predictably, resorts to ridicule, hyperbole, personal anecdotes and observations, assaults on positions not taken by the majority, quotes taken out of context, and facts outside the record to attack a legal analysis with which he does not agree. If the majority decision is indeed wrong, it should be possible to demonstrate that error in a mature and professional counteranalysis.