# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *People v. Hackett*, 2012 IL 111781

---

| | |
|---|---|
| Caption in Supreme Court: | THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. DENNIS HACKETT, Appellee. |
| Docket No. | 111781 |
| Filed | July 6, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | A driver who deviated from his lane twice for no obvious reason provided a "reasonable, articulable suspicion" of a traffic violation justifying an investigatory stop—probable cause not required, distance traveled not dispositive, and suppression in DUI case reversed. |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Will County, the Hon. Carla Alessio Policandriotes, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Springfield, and James W. Glasgow, State's Attorney, of Joliet (Michael A. Scodro, Solicitor General, and Michael M. Glick and David H. Iskowich, Assistant Attorneys General, of Chicago, and Patrick Delfino, Terry A. Mertel and Nadia L. Chaudhry, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.


Ryan Kosztya, of Joliet, for appellee.


Justices

JUSTICE KARMEIER delivered the judgment of the court, with opinion.
Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Burke, and Theis concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Dennis Hackett, was charged in the circuit court of Will County with aggravated driving under the influence of alcohol (625 ILCS 5/11-501(a)(2), (d)(1)(A) (West 2008)) and aggravated driving while license revoked (625 ILCS 5/6-303(d-3) (West 2008)). Defendant filed a motion to quash arrest and suppress evidence, arguing that the arresting officer lacked "probable cause" to stop defendant's vehicle and, as a result, evidence gathered after the "improper stop" constituted fruit of an unlawful search. The avowed basis for the traffic stop was a violation of section 11-709(a) of the Illinois Vehicle Code (Code) (625 ILCS 5/11-709(a) (West 2008) (improper lane usage)). After a hearing, the circuit court granted defendant's motion, finding that defendant's "momentary crossings" of a highway lane line did not give the officer "reasonable grounds" to make the stop. The State appealed, and a divided appellate court affirmed, the majority acknowledging this court's decision in *People v. Smith*, 172 Ill. 2d 289 (1996), while seeking to distinguish that case on the ground that this defendant had not driven in more than one lane for a "reasonably appreciable distance." 406 Ill. App. 3d 209, 214. We allowed the State's petition for leave to appeal (Ill. S. Ct. R. 315 (eff. Feb. 26, 2010)). We now reverse the judgment of the appellate court and remand this cause to the circuit court for further proceedings.

¶ 2                        PRINCIPAL STATUTE INVOLVED

¶ 3    Section 11-709(a) of the Code provides as follows:

"Whenever any roadway has been divided into 2 or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply.

(a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." 625 ILCS 5/11-709(a) (West 2008).

¶ 4                     MOTION HEARING AND RULING

¶ 5         At the hearing on defendant's motion to suppress, defendant testified that on August 19, 2008, he drove to a gas station on Briggs Street in Joliet, Illinois. His route home took him north on Briggs Street, which has two lanes northbound and two lanes southbound. At one point, he changed from the right to the left lane, using his turn signal. He was traveling the posted speed limit. Defendant testified the roadway was "in need of repair like many other roads in the Joliet area." Asked if he noticed any potholes as he proceeded northbound on Briggs, defendant stated: "There were several of them." Defense counsel asked: "Did you have to take any evasive action in your pickup truck to avoid driving straight into potholes?" Defendant responded: "There is a possibility, yes." Defendant testified, after turning off Briggs Street, and up to the moment he was stopped, he had not committed any traffic violations.

¶ 6         On cross-examination, the prosecutor inquired regarding defendant's consumption of alcohol prior to the traffic stop. Over a defense objection, the court allowed evidence of alcohol consumption only as it bore upon defendant's ability to recall events and his perception of his own conduct. In response to the prosecutor's questioning, defendant initially testified that he had "a couple" of beers from 11:30 a.m. to 4 p.m. Later, defendant testified: "A couple, three. I'm not certain." Asked if it was more than three, defendant responded: "I don't believe so but—." Defendant acknowledged everything was working on his truck and it was not disposed to drift. Defendant admitted, after he changed from the right to left lane on Briggs, it was possible that his tires "may have touched or crossed over that line again." He did not think it happened twice. The prosecutor asked: "But one time it is possible?" Defendant answered: "Well, with the potholes and different things. I—I would imagine that I probably did move towards the center of the road."

¶ 7         Following defendant's testimony, the State moved for a "directed verdict." The court denied the motion.

¶ 8         The State then called Deputy Michael Blouin to testify. Blouin, a Will County deputy for 19 years, testified that on August 19, 2008, at approximately 4:15 p.m., he was northbound on Briggs Street in Joliet when he observed a white GMC pickup truck—which he later determined was driven by defendant—in the right lane directly in front of him. At some point, the truck moved into the left lane, and Deputy Blouin followed. Blouin described the roadway as dry, straight, four lanes, with a divider between the northbound and southbound lanes, and a black-and-white striped lane line between the right and left lanes running in each direction. Blouin could not recall any potholes or other obstructions in the roadway. He testified that he did not move his car to avoid any potholes, and he did not hit any potholes.

¶ 9         As he followed the truck, he saw it move to the right. Blouin stated: "[I]t crossed over with both right tires, the black-and-white striped line. It went slightly over the black-and-white striped line. It didn't go halfway into the right-hand lane." Continuing, Blouin testified: "I just remember seeing that the tires separated from the black-and-white stripe, and then it came back to the left. It did that twice." The encroachments into the right lane occurred four or five seconds apart. There were no cars in the right lane at the time of the deviations. Blouin saw no reason why the truck needed to move from the left lane into the right. After those deviations, the truck made a left turn onto Third Street, and then another left, at which

point Blouin activated his lights and attempted to stop the truck. Blouin testified the basis for the traffic stop was improper lane usage on Briggs.

¶ 10    When defendant did not respond to his lights, Blouin used his siren, and defendant's vehicle eventually came to a stop. However, the truck did not remain stationary even then:

> "And just as I was getting ready to get out of the car, he started moving forward again and then stopped.
>
> And then I saw the backup lights go on so I didn't get out of the squad car right away. I just waited for a brief period of time until I saw the backup lights go out, and then I got out of my squad car."

¶ 11    Under cross-examination, Blouin testified he was about a block north of the gas station when he first observed defendant's vehicle. He acknowledged his police report indicated there was a "slight" crossing of the black-and-white lane divider. Blouin indicated he does not usually write a ticket for improper lane usage if there is only one deviation outside the driver's lane, however:

> "After that second time, then there is to me obviously a problem with his driving. So then it is not a practicality [*sic*] issue, there is something else."

¶ 12    Deputy Blouin testified that defendant's vehicle intruded "less than halfway" into the right lane, "barely" or "slightly" crossing over the line. He reiterated that no one was in danger as a result of those movements. Blouin acknowledged that defendant complied with all traffic laws before and after the two lane infractions and that he was driving properly when he was stopped.

¶ 13    Asked, on redirect, to clarify the extent of defendant's lane deviation, Blouin reiterated that there was space between defendant's tires and the dividing line.

¶ 14    In rendering its ruling, the circuit court characterized the defense motion as "a request for [the] court to make a finding that the deputy did not have reasonable grounds to make a stop of [defendant's] vehicle." The court made no credibility determinations, stating that the "defendant testified as to the manner of his operation of the vehicle, which is consistent with the testimony of the deputy in pertinent finding." The trial judge recited the following facts as the basis for his ruling: "the GMC's right-hand tires on two occasions for approximately four seconds each slightly cross *** the black-and-white striping that is on that roadway to separate the left lane of traffic and the right lane ***." The court granted defendant's motion, concluding, "those momentary crossings in no way would have led any reasonable, objectively looking police officer to think that there was some motorist who was presenting a dangerous or menacing or illegal conduct, and certainly was less than perfect, but does not rise to the level of giving the officer reasonable grounds to make the stop."

¶ 15    A divided panel of the appellate court affirmed the judgment of the circuit court. The appellate majority acknowledged this court's decision in *People v. Smith*, 172 Ill. 2d 289 (1996), wherein this court construed section 11-709(a) of the Code to establish two "separate" requirements for proper lane usage:

> " 'First, a motorist must drive a vehicle as nearly as practicable entirely within one lane. Second, a motorist may not move a vehicle from a lane of traffic until the motorist has determined that the movement can be safely made.' " (Emphasis

-4-

omitted.) 406 Ill. App. 3d at 213-14 (quoting *Smith*, 172 Ill. 2d at 297).

¶ 16    As the appellate court recognized, this court, in *Smith*, rejected an argument that a violation of section 11-709(a) occurs "only when a motorist endangers others while moving from a lane of traffic." 406 Ill. App. 3d at 213. However, the appellate majority misinterpreted the holding of *Smith*—"when a motorist crosses over a lane line and is not driving as nearly as practicable within one lane, the motorist has violated the statute" (see *Smith*, 172 Ill. 2d at 297)—and fashioned its own rule, attempting to distinguish the facts of this case from those of *Smith.* The appellate court concluded that a driver, to violate the statute, must drive "for some reasonably appreciable distance in more than one lane of traffic." 406 Ill. App. 3d at 214.

¶ 17                              ANALYSIS

¶ 18    In reviewing a trial court's ruling on a motion to suppress, the trial court's findings of historical fact are reviewed only for clear error, giving due weight to any inferences drawn from those facts by the fact finder, and reversal is warranted only when those findings are against the manifest weight of the evidence. *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). However, a reviewing court remains free to undertake its own assessment of the facts in relation to the issues and may draw its own conclusions when deciding what relief should be granted. *Luedemann*, 222 Ill. 2d at 542. A trial court's ultimate legal ruling as to whether suppression is warranted is subject to *de novo* review. *Luedemann*, 222 Ill. 2d at 542.

¶ 19    We address, at the outset, the loose terminology the parties and lower courts in this case have used with reference to the standards applicable to the fourth amendment issue presented for our consideration. The question we agreed to address, as set forth in the State's petition for leave to appeal, is "whether the appellate court erroneously found there was no *reasonable suspicion* for a traffic stop where the uncontested testimony showed defendant swerved twice across a lane divider of traffic." (Emphasis added.) Before this court, the State argues, initially, that Deputy Blouin had "reasonable suspicion" to stop defendant for violating section 11-709(a) of the Code, suggesting that the standard applicable to investigatory traffic stops applies; however, the State subsequently argues—beyond the scope of its petition for leave to appeal—that the deputy had "probable cause" to stop defendant's vehicle for improper lane usage. The defendant contends, for his part, that Blouin did not have "reasonable grounds" to effectuate the traffic stop. In ruling upon defendant's motion to quash and suppress, which claimed Deputy Blouin did not have "probable cause" to stop defendant, the circuit court concluded the officer did not have "reasonable grounds" to do so. In the course of its opinion, affirming the judgment of the circuit court, the appellate court at one point states that application of its prior precedent would have resulted in affirmance on the basis that Deputy Blouin "did not have *probable cause* to believe that defendant had committed a traffic violation" (emphasis added) (406 Ill. App. 3d at 213); however, at another juncture in its analysis, quoting *People v. Mott*, 389 Ill. App. 3d 539, 543-44 (2009), the appellate court seemingly accepts the principle that a police officer, to effect a valid traffic stop, need only have "reasonable suspicion" that a driver has violated the Vehicle Code, explaining that reasonable suspicion exists where "an officer possesses specific, articulable facts that, when combined with rational inferences derived from those facts, give

-5-

rise to a belief the driver is committing a traffic violation" (406 Ill. App. 3d at 214).

¶ 20    Vehicle stops are subject to the fourth amendment's reasonableness requirement. *Whren v. United States*, 517 U.S. 806, 810 (1996); *People v. McDonough*, 239 Ill. 2d 260, 267 (2010). " 'As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.' " *McDonough*, 239 Ill. 2d at 267 (quoting from *Whren v. United States*, 517 U.S. 806, 810 (1996), and citing *People v. Gonzalez*, 204 Ill. 2d 220, 227-28 (2003), *overruled on other grounds by People v. Harris*, 228 Ill. 2d 222, 244 (2008)). However, as this court has observed, though traffic stops are frequently supported by "probable cause" to believe that a traffic violation has occurred, as differentiated from the "less exacting" standard of "reasonable, articulable suspicion" that justifies an "investigative stop," the latter will suffice for purposes of the fourth amendment irrespective of whether the stop is supported by probable cause. *Gonzalez*, 204 Ill. 2d at 227-28; *People v. Close*, 238 Ill. 2d 497, 505 (2010). A police officer may conduct a brief, investigatory stop of a person where the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. *Close*, 238 Ill. 2d at 505. The officer's belief "need not rise to the level of suspicion required for probable cause." *Close*, 238 Ill. 2d at 505 (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). The distinction between these two standards may or may not be relevant, depending upon the facts of the case under consideration and the Vehicle Code provision at issue.

¶ 21    As the courts below acknowledged, this court construed section 11-709(a) in *Smith*. In that case, the defendant was stopped for a traffic infraction, but he was ultimately arrested for driving under the influence of alcohol, and he was taken to the police station, where he refused to submit to further testing to determine the alcohol content of his blood. As a result, defendant was served with notice of the statutory summary suspension of his driving privileges. See 625 ILCS 5/11-501.1 (West 1992).

¶ 22    At the ensuing summary suspension hearing, the arresting officer, Officer Charles, testified that he followed defendant's vehicle and saw the driver's side wheels of defendant's car cross over the lane line dividing the left lane from the center lane by at least six inches. He stated that defendant failed to signal a lane change and that the car remained over the lane line for approximately 100 to 150 yards. A short time later, he saw defendant cross over the lane line dividing the left lane from the right lane by approximately six inches for 150 to 200 yards. Once again, defendant did not signal. After these two occurrences, Officer Charles determined that defendant had violated the Code for failing to signal a lane change and he stopped defendant. Officer Charles conceded that defendant did not endanger any other vehicles or persons when he deviated across the lane lines and that defendant never completely left the lane in which he was traveling. *Smith*, 172 Ill. 2d at 293.

¶ 23    After hearing the evidence, the circuit court framed the issue as whether Officer Charles had probable cause to stop defendant for a violation of the Code other than for driving under the influence of alcohol. The court found Officer Charles to be a credible witness, and noted that a videotape taken on the day in question corroborated the officer's testimony. The court nevertheless concluded that Officer Charles did not have probable cause to stop defendant for failure to signal or for the violation of any other traffic law. Accordingly, the circuit court granted defendant's petition to rescind the statutory summary suspension of his driving

privileges. *Smith*, 172 Ill. 2d at 294.

¶ 24 The appellate court, with one justice dissenting, reversed the judgment of the circuit court, concluding that Officer Charles was justified in stopping defendant for improper lane usage in violation of section 11-709(a) of the Code (625 ILCS 5/11-709(a) (West 1992)). *Smith*, 172 Ill. 2d at 294.

¶ 25 This court affirmed, rejecting, *inter alia*, defendant's argument that "a violation of section 11-709(a) does not occur when a motorist momentarily crosses over a lane line, but occurs only when a motorist endangers others while moving from a lane of traffic." See *Smith*, 172 Ill. 2d at 296, 298. This court determined, pursuant to the "plain language of the statute," "when a motorist crosses over a lane line and is not driving as nearly as practicable within one lane, the motorist has violated the statute." *Smith*, 172 Ill. 2d at 296-97. The *Smith* court observed that the appellate court had found Officer Charles had " 'specific, articulable facts upon which to believe defendant's vehicle was in violation of the Code when he pulled it over' " (*Smith*, 172 Ill. 2d at 297 (quoting *People v. Smith*, 269 Ill. App. 3d 962, 968 (1995))), and the court confirmed that an "officer may make a valid investigatory stop, absent probable cause to arrest, provided the officer can reasonably infer from specific and articulable facts that the individual in question has committed or is about to commit a crime" (*Smith*, 172 Ill. 2d at 297 (citing 725 ILCS 5/107-14 (West 1992), and *Terry v. Ohio*, 392 U.S. 1, 21 (1968))). However, this court found that the appellate court did not need to consider the officer's "reasonable and articulable suspicions surrounding defendant's conduct" because "Officer Charles had probable cause to arrest defendant for a violation of the Code," *i.e.*, section 11-709(a). *Smith*, 172 Ill. 2d at 297.

¶ 26 The appellate majority in this case attempted to distinguish *Smith* on the basis of the distance that defendant traveled: "We construe *Smith*, we believe properly and consistently with the supreme court's intent, to apply to situations like the one presented to the court in *that* case, where the driver of the vehicle actually drives for some reasonably appreciable distance in more than one lane of traffic." (Emphasis in original.) 406 Ill. App. 3d at 214. Although this court in *Smith*, in its factual recitation of Officer Charles' testimony, mentioned the measure of defendant's deviation into an adjacent lane and the distance he traveled therein, nothing in this court's *analysis* indicated either was significant to the outcome. Neither was discussed therein, and neither factor is mentioned in section 11-709(a). We now make clear that the distance a motorist travels while violating the proscription of section 11-709(a) is not a dispositive factor in the applicable analysis. This court's pronouncement in *Smith* was without qualification in that regard: "[W]hen a motorist crosses over a lane line and is not driving as nearly as practicable within one lane, the motorist has violated the statute." See *Smith*, 172 Ill. 2d at 297. Thus, the appellate court erred when it attached a distance requirement to the statute's proscription.

¶ 27 That said, in another regard, the pronouncement in *Smith* is broader than circumstances warranted. This court's decision in *Smith* suggests that Officer Charles' observation of a lane deviation, in and of itself, constituted "probable cause to arrest defendant for a violation of the Code." *Smith*, 172 Ill. 2d at 297. Yet, it is clear that section 11-709(a) is not a strict liability offense. In order to establish a violation of section 11-709(a), in those instances where safe operation of the vehicle is not a separate issue, the State must show that the defendant-driver did not operate his or her vehicle "*as nearly as practicable* entirely within

-7-

a single lane." (Emphasis added.) 625 ILCS 5/11-709(a) (West 2008); see *Close*, 238 Ill. 2d at 508 (quoting *People ex rel. Courtney v. Prystalski*, 358 Ill. 198, 203-04 (1934) ("[I]t is the rule in this State that where an act is made criminal, with exceptions embraced in the enacting clause creating the offense, so as to be descriptive of it, the People must allege and prove that the defendant is not within the exceptions so as to show that the precise crime has been committed.")). Thus, in order to establish probable cause that a violation of section 11-709(a) has occurred, the officer must point to facts which support a reasonable belief that defendant has deviated from his established lane of travel *and* that it was "practicable" for him to have remained constant in his proper lane. The dictionary defines "practicable" as "possible to practice or perform." Webster's Third New International Dictionary 1780 (1976). The statute clearly requires a fact-specific inquiry into the particular circumstances present during the incident to determine whether factors such as weather, obstacles, or road conditions might have necessitated defendant's lane deviation. Though the *Smith* court found there was probable cause to believe that section 11-709(a) had been violated, it never addressed this component of the statute.

¶ 28 Nonetheless, as we have indicated, a traffic stop may be justified on something less than probable cause. A police officer can effect a lawful *Terry* stop without first "considering whether the circumstances he or she observed would satisfy each element of a particular offense." *Close*, 238 Ill. 2d at 510. Where, as here, a police officer observes multiple lane deviations, for no obvious reason, an investigatory stop is proper. For probable cause and conviction, there must be something more: *affirmative* testimony that defendant deviated from his proper lane of travel *and* that no road conditions necessitated the movement. An investigatory stop in this situation allows the officer to inquire further into the reason for the lane deviation, either by inquiry of the driver or verification of the condition of the roadway where the deviation occurred.

¶ 29 We hold that Deputy Blouin's observations justified an investigatory traffic stop. Here, Deputy Blouin twice saw defendant deviate from his own lane of travel into another lane for no obvious reason. Although his testimony suggests that he was focused on defendant's driving, rather than road conditions—he "could not recall" any potholes or other obstructions in the roadway—his observation of two lane deviations was sufficient to justify an investigatory traffic stop. In judging a police officer's conduct, we apply an objective standard, considering whether the facts available to the officer at the moment of the seizure justify the action taken. *Close*, 238 Ill. 2d at 505. Here, they did. In passing, although it is not pertinent to our analysis, we observe that this defendant—who, admittedly, had been drinking during the course of the day—offered no *affirmative* testimony that he swerved to miss potholes, merely speculating as to what *possibly* might have accounted for his lane deviations.

¶ 30 While not necessary to our analysis and disposition, we note that the tone taken by the dissenting appellate justice in this case adds nothing to his analysis. Unfortunately, that tone invited a footnote in the majority opinion which, again, added nothing to *its* analysis, but merely highlighted the tone of the dissent in this and other cases. While forceful argument in support of a position is to be expected, and can contribute to the deliberative process, disparaging exchanges on a personal level contribute nothing to that process. Sound reasoning stands on its own. Personal disparagement diminishes the force of the argument,

the stature of the author and the process of appellate review itself.

¶ 31     In sum, we hold that the officer in this instance, at a minimum, was justified in conducting an investigatory stop of defendant's vehicle. The circuit court therefore erred in granting defendant's motion to quash arrest and suppress evidence. Consequently, we reverse the judgments of the circuit and appellate courts and remand to the circuit court for further proceedings.

¶ 32     Reversed and remanded.