**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180097-U

Order filed June 19, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0097 Circuit No. 14-CF-150 |
| MICHAEL ANDREW SCHMILLEN, | ) ) ) | Honorable Lisa Y. Wilson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE WRIGHT delivered the judgment of the court.
Presiding Justice Lytton and Justice O'Brien concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The court properly denied defendant's motion to suppress evidence as the arresting officer had reasonable suspicion to believe that defendant had committed a traffic violation. Defendant's convictions violate the one-act, one-crime rule as they derive from the same physical act.

¶ 2    Defendant, Michael Andrew Schmillen, appeals from his two convictions for aggravated driving under the influence of alcohol (aggravated DUI). Defendant argues: (1) the Peoria County circuit court erred by denying his motion to suppress evidence, and (2) one of his

convictions must be vacated under the one-act, one-crime rule. We affirm in part and remand with directions.

¶ 3                                I. BACKGROUND

¶ 4        The State charged defendant by indictment with two counts of aggravated DUI (625 ILCS 5/11-501(d)(2)(B) (West 2014)). Count I alleged defendant, who had two prior DUIs, knowingly operated a Suzuki Katana motorcycle on Main Street in Peoria while he was under the influence of alcohol. Count II alleged defendant, who had two prior DUIs, operated a Suzuki Katana motorcycle on Main Street in Peoria while the alcohol concentration in his blood or breath was 0.08 or more. The court appointed the public defender to represent defendant.

¶ 5        During the pretrial proceedings, defense counsel filed a motion to suppress evidence and a motion *in limine*—to exclude evidence of the field sobriety tests because it was conducted on a sloping surface.

¶ 6        The cause first proceeded to a hearing on defendant's motion *in limine*. Defense counsel called Walter Greenberg to testify. Greenberg and defendant were friends, and defendant asked Greenberg to bring a level to the scene of the traffic stop. Greenberg used his level to measure the slope of the scene and took photographs of the scene. Greenberg described the area as "a slanting driveway."

¶ 7        The State called Illinois State Trooper Jake Duro to testify. Duro became a trooper in May 2009. At the time of defendant's stop, Duro had participated in over 150 DUI arrests. On the night of June 9, 2013, Duro saw and heard a motorcycle squeal its tire as it traveled through the intersection of Main and Madison Streets. Duro described the motorcycle as a "Katana" and a "sport bike." Duro stopped the motorcycle near the intersection of Main and Globe Streets. Duro identified defendant as the driver of the motorcycle. Defendant said he made "a stupid move" by

squealing his tire in front of Duro. Duro smelled the odor of an alcoholic beverage on defendant's breath. Duro suspected defendant was under the influence of alcohol and asked him to perform several field sobriety tests. Duro attempted to find the flattest surface possible and directed defendant to perform the field sobriety tests on a nearby sidewalk. Duro also performed a breath-alcohol test at the scene.

¶ 8        On cross-examination, Duro said he was half a block to one block away from the motorcycle when he first saw it. Duro said the "sport bike" was "unequivocally" the motorcycle that had squealed its tire. Duro did not remember seeing another motorcycle next to defendant either at the time of the tire squeal or immediately before the traffic stop.

¶ 9        The State also introduced into evidence the video recording of the traffic stop. The video did not record the tire squeal, but it shows Duro enter his patrol car, travel down Main Street and catch up to two motorcycles that are stopped at a traffic light. The motorcycle at the front of the line had saddle bags and the driver is seated in an upright position. The second motorcycle does not have saddle bags and the driver is seated in a leaning forward position. When Duro activates his overhead lights, the second motorcycle pulls over in an area with an inclined drive.

¶ 10       The court denied defendant's motion *in limine*.

¶ 11       At the hearing on the motion to suppress, Duro testified consistent with his testimony at the prior hearing, that he saw and heard a motorcycle squeal its tire through the intersection of Main and Madison Streets. Duro did not see any other motorcycles at that time. Duro stopped the motorcycle near the intersection of Main and Globe Streets. Defendant drove the motorcycle, and Duro noticed a strong odor of an alcoholic beverage emanating from defendant. Duro also noted defendant's speech was slurred. Defendant told Duro that he had been drinking. Defendant also told Duro that squealing his tire "was stupid." Duro conducted field sobriety tests and a

breath-alcohol test. Defendant had a 0.142 blood alcohol content (BAC). Duro arrested defendant due to defendant's performance on the field sobriety tests.

¶ 12   During Duro's testimony, defense counsel played the video recording from the dash camera in Duro's patrol car. While watching the recording, Duro restated he did not recall seeing two motorcycles, but noted the video showed two motorcycles. Duro said the motorcycles were distinct from one another as one was a "sport bike," a Suzuki Katana, and the other was a "full-dressed road king-style Harley Davidson." Duro forgot about the second motorcycle because he "tunnel-visioned" on the sport bike. Duro explained it would have been more difficult for the Harley-Davidson motorcycle to squeal its tire, and he "visibly saw which bike squealed its tires and went by, [and] knew it was a sport bike."

¶ 13   While testifying for the State, Duro said he temporarily lost sight of the motorcycle as he entered his patrol car, but he "stopped the vehicle that [he] saw." Duro explained that when he observes a traffic violation, he makes a mental note of the driver's appearance. In this case, he noted the offending motorcycle driver wore a backwards hat. Duro stopped the same individual, who was wearing a backwards hat while riding a sport bike.

¶ 14   The court denied defendant's motion to suppress finding Duro had reasonable suspicion to stop defendant for squealing the tire on his motorcycle. The court noted the stop occurred a "very short distance" from the location where the traffic infraction occurred, defendant admitted to squealing his tire, the field sobriety tests indicated several clues of impairment, and the breath-alcohol test indicated defendant's BAC was more than 0.08.

¶ 15   The evidence at trial showed Duro stopped defendant for squealing his tire. Duro noticed defendant's breath smelled of an alcoholic beverage, and his speech was slurred. Duro

4

administered a series of field sobriety tests, and defendant exhibited several clues of impairment. A breath-alcohol test indicated that defendant's BAC was greater than 0.08.

¶ 16    The jury found defendant guilty of both charges. The court imposed a sentence of 24 months' probation on both charges. Defendant appeals.

¶ 17                                II. ANALYSIS

¶ 18                          A. Motion to Suppress Evidence

¶ 19    Defendant argues the court erred by denying his motion to suppress evidence because Duro did not have reasonable suspicion to initiate a traffic stop based only on a sound. We find Duro properly relied on his years of experience to: differentiate the two motorcycles, determine the sport bike made the tire squeal, and stop the motorcycle that defendant was driving.

¶ 20    We apply a two-part standard of review to the circuit court's ruling on defendant's motion to suppress evidence. *People v. Gaytan*, 2015 IL 116223, ¶ 18. The court's findings of fact are entitled to great deference and will not be reversed unless they are against the manifest weight of the evidence. *People v. Hackett*, 2012 IL 111781, ¶ 18. We review *de novo* the court's ultimate legal ruling of whether reasonable suspicion or probable cause exists and whether suppression is warranted. *Id.*

¶ 21    The fourth amendment to the United States Constitution guarantees a citizen's right to be free from unreasonable searches and seizures. U.S. Const., amend. IV. A traffic stop constitutes a seizure and is subject to the fourth amendment's reasonableness requirement. *People v. Close*, 238 Ill. 2d 497, 504-05 (2010). An officer's decision to stop an automobile satisfies this reasonableness requirement where the officer had probable cause to believe a traffic violation has occurred. *Hackett*, 2012 IL 111781, ¶ 20 (citing *Whren v. United States*, 517 U.S. 806, 810 (1996); *People v. McDonough*, 239 Ill. 2d 260, 267 (2010)). However, a traffic stop may also be

5

reasonable where it is supported by " 'reasonable, articulable suspicion' that justifies an 'investigative stop.' " *Id.* (quoting *People v. Gonzalez*, 204 Ill. 2d 220, 227 (2003), *overruled on other grounds by People v. Harris*, 228 Ill. 2d 222, 244 (2008)). An investigatory stop allows an officer to briefly investigate the circumstances that provoked his suspicions and to confirm or dispel that suspicion. *Close*, 238 Ill. 2d at 505. "In judging a police officer's conduct, a court will apply an objective standard and will determine whether the facts available to the officer at the moment of the seizure would lead an individual of reasonable caution to believe that the action taken by the officer was appropriate." *People v. Little*, 2016 IL App (3d) 130683, ¶ 16.

¶ 22    In this case, Duro had reasonable suspicion to conduct a traffic stop based on his belief that defendant had committed the traffic infraction of squealing the tire on his motorcycle. See 625 ILCS 5/11-505 (West 2014). Duro saw what he described as a sport bike squeal its tire as it passed through the intersection of Main and Madison Streets. From his training and experience, Duro was able to differentiate the two motorcycles that were in the intersection at the time of the noise and determine that the sport bike made the noise. Duro then focused on the offending motorcycle and noticed the driver was wearing a backwards hat. As a result of the physical differences between the two motorcycles and Duro's view of the offending driver, his suspicion narrowed to only one of the motorcycles. Duro stopped the sport bike that was driven by the individual wearing a backwards hat. Ultimately, Duro's suspicion proved correct as defendant admitted that he had squealed his tire in front of Duro's location.

¶ 23    Throughout the course of Duro's testimony, his description of the offending motorcycle did not change. Although he initially did not recall the second motorcycle, this likely was the result of his focus on the offending motorcycle. Thus, the court's factual findings were not against the manifest weight of the evidence.

6

¶ 24 　　　　We note that the tire squeal, by itself, provided Duro with the reasonable suspicion of a traffic violation to conduct an investigatory stop of either motorcycle. At that point, Duro could investigate whether the stopped motorcycle had committed the offense. See, *e.g.*, *Hackett*, 2012 IL 111781, ¶ 29 (deputy's observations that defendant twice deviated from his lane of travel justified an investigatory traffic stop). We conclude that the court did not err when it denied defendant's motion to suppress evidence.

¶ 25 　　　　　　　　　　　　　　B. One-Act, One-Crime

¶ 26 　　　　Defendant argues one of his convictions must be vacated under the one-act, one-crime doctrine because both convictions derive from a single physical act. The State agrees that one of defendant's aggravated DUI convictions must be vacated but asks that we remand the cause with directions for the circuit court to determine which offense is most serious. After reviewing the record, we find defendant's two convictions derive from the same physical offense, and therefore, one is subject to vacatur.

¶ 27 　　　　The one-act, one-crime rule prohibits the imposition of multiple convictions that are based on the same physical act. *People v. King*, 66 Ill. 2d 551, 566 (1977). "[A]n 'act' is defined as any overt or outward manifestation that will support a separate conviction." *People v. Almond*, 2015 IL 113817, ¶ 47. "[U]nder the one-act, one-crime doctrine, [a] sentence should be imposed on the more serious offense and the less serious offense should be vacated." *People v. Artis*, 232 Ill. 2d 156, 170 (2009). The issue of whether a conviction violates the one-act, one-crime rule is a question of law that is subject to *de novo* review. *Id.*

¶ 28 　　　　In the present case, both of defendant's aggravated DUI convictions derive from the same physical act: defendant drove a motorcycle while he was under the influence of alcohol. Therefore, both charges cannot stand under the one-act, one-crime rule. As we are unable to

discern which of these charges is less severe and subject to vacatur, we remand the cause with directions for the circuit court to vacate the less serious conviction.

¶ 29                                III. CONCLUSION

¶ 30        The judgment of the circuit court of Peoria County is affirmed in part and remanded with directions.

¶ 31        Affirmed in part and remanded with directions.