2024 IL App (1st) 232274-U

FIFTH DIVISION
February 9, 2024

No. 1-23-2274B

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 23 CR 415801 |
| | ) | |
| KEVIN McMURTRY, | ) | Honorable |
| | ) | Alfredo Maldonado, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MIKVA delivered the judgment of the court.
Presiding Justice Mitchell and Justice Lyle concurred in the judgment.

**O R D E R**

¶ 1    *Held*:  The circuit court's order granting the State's petition for pretrial detention is affirmed. It was not an abuse of discretion to conclude that no conditions would mitigate the real and present threat to the safety of individuals or the community that would result from defendant's pretrial release.

¶ 2    Defendant Kevin McMurtry appeals from the circuit court's order granting the State's petition to deny pretrial release under the dangerousness standard set out in section 110-6.1 of the Code of Criminal Procedure of 1963 (Code), as amended by Public Act 101-652, § 10-255, and Public Act 102-1104, § 70 (eff. Jan. 1, 2023) (725 ILCS 5/110-6.1 (West 2022)), commonly known

as the Pretrial Fairness Act. For the reasons that follow, we affirm the court's order of detention.

¶ 3                                              I. BACKGROUND

¶ 4      The State charged Mr. McMurtry with first degree murder (720 ILCS 5/9-1(a)(1) (West 2022); 720 ILCS 5/9-1(a)(2) (West 2022)), attempted murder (720 ILCS 5/8-4(a) (West 2022)), and aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 2022)) arising from an incident on March 4, 2023. Mr. McMurtry was placed into custody on March 21, 2023. He was initially held on bond. When the amendments to section 110-6.1 of the Code took effect on September 18, 2023, however, Mr. McMurtry elected, pursuant to sections 110-5(e) and 110-7.5(b) of the Code (725 ILCS 5/110-5(e), 110-7.5(b) (West 2022)), to have his pretrial conditions reassessed under the new statutory requirements. See *People v. Rios*, 2023 IL App (5th) 230724, ¶ 16 (noting that "[u]nder sections 110-7.5(b) and 110-5(e), a defendant may file a motion seeking a hearing to have [his] pretrial conditions reviewed anew"). Mr. McMurtry filed his petition for pretrial release on October 17, 2023.

¶ 5      In response, on November 2, 2023, the State filed a petition for Mr. McMurtry to be detained until trial, arguing that he committed an eligible offense listed under section 110-6.1 of the Code and that he posed "a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." 725 ILCS 5/110-6.1(a)(1.5), (e)(2) (West 2022). It further argued that no condition or combination of conditions set forth in section 110-10(b) of the Code could mitigate those risks. *Id.* § 110-10(b).

¶ 6      Mr. McMurtry was present and represented by counsel at the hearing on the State's petition, which was held on the same day the State filed its petition. The State gave the following extensive proffer in support of the charges against Mr. McMurtry.

¶ 7      On March 4, 2023, the victim, Jamal Fields, was a passenger in a vehicle driven by an

individual with the last name of Brittman that was headed west on 59th Street in Chicago, Illinois. Mr. McMurtry's wife, Quina House-McMurtry, was driving a Chevy Malibu, registered to Mr. McMurtry's grandmother, on the same street headed in the same direction.

¶ 8    The State represented that a police observation device (POD) camera recorded Mr. Brittman's vehicle cutting off Ms. House-McMurtry's vehicle and then pulling over and stopping along the side of the road. According to the State, the video then shows the Malibu driving four blocks in the same direction and parking at the Family Dollar, located at 1615 West 59th Street, where Mr. McMurtry was working.

¶ 9    The State further represented that video surveillance footage from inside the Family Dollar would demonstrate that, immediately following the traffic incident, Mr. McMurtry received a cell phone call and spoke to someone. Mr. McMurtry's and Ms. House-McMurtry's call and text message records on March 4, and the days leading up to it, were later found to be deleted.

¶ 10    After receiving the call, Mr. McMurtry told a coworker that he had to briefly leave his shift because his wife had been cut off in traffic. The state represented that video would show Mr. McMurtry leaving the store and entering the driver's side of the Chevy Malibu, with Ms. House-McMurtry in the back and a second individual who the State claimed was a potential co-offender seated in the passenger seat.

¶ 11    The State represented that several POD videos and the Family Dollar surveillance video tracked the Malibu leaving the store in the direction of where Mr. Brittman had cut off Ms. House-McMurty. A POD camera would also show that Mr. Fields and Mr. Brittman had, in the elapsed time, exited their vehicle, entered a residence, and reentered their vehicle.

¶ 12    According to the lone eyewitness, as proffered by the State, Mr. McMurtry drove the Malibu directly at Mr. Brittman's vehicle. Mr. Brittman had started to pull away from the curb and

swerved to evade the Malibu when two gunshots were fired from the direction of the Malibu. The State proffered that, in police-recorded body-worn camera footage, Mr. Brittman later stated that he believed one gunshot came from the driver.

¶ 13    Mr. McMurtry contests this order of events. In his brief on appeal, he argues that Mr. Brittman gave two accounts of what occurred, one was as the State proffered. The other was that Mr. Brittman admitted that he ducked down when he saw a car being driven at him and *before* shots were allegedly fired from the Malibu, crippling the State's ability to satisfy the first prong and prove that the driver, and not the passenger, was the shooter that struck Mr. Fields.

¶ 14    The State said that evidence would show that Mr. McMurtry continued to drive the Malibu east before returning to the Family Dollar, where he went back to work.

¶ 15    Mr. Brittman drove Mr. Fields to St. Bernard's Hospital where Mr. Fields died from a gunshot wound. A single bullet was recovered from his body and a nine-millimeter shell casing was recovered from the scene of the shooting.

¶ 16    The State informed the court that it had issued a warrant for the historical location data from a phone number Mr. McMurtry had previously provided to the State. That data indicated that the phone had traveled along the Malibu's described path on the date of the occurrence. The State further informed the court that it had later found gunshot residue in the Malibu.

¶ 17    When Mr. McMurtry was initially questioned by police following his arrest, he requested an attorney and the questioning stopped. The State claimed that Mr. McMurtry then reinitiated further conversation with the officers, was returned to the detective division, and gave officers a video-taped statement. Defense counsel denied that Mr. McMurtry reinitiated conversation and pointed out that the alleged reinitiation was not recorded.

¶ 18    In Mr. McMurtry's recorded statement, according to the State, Mr. McMurtry reported that

he and a man named Xavier House got into the front passenger seat of the parked Malibu after Mr. McMurtry received a call from his wife in which she described the incident where she was cut off in traffic. Mr. McMurtry stated that Mr. House brought two guns and gave one to Mr. McMurtry. Both he and Mr. House later fired separate shots out of the driver's window at Mr. Brittman's vehicle. Mr. McMurtry eventually saw that Mr. Fields had died in the news and he told officers that he would have to "face up to it."

¶ 19    The State recounted Mr. McMurtry's criminal history. Mr. McMurtry had a felony from 2012 for driving on a suspended or revoked license, for which he received 18 months in the Illinois Department of Corrections. In 2007, he received a year for an aggravated DUI, and in 2006 he was convicted of escape, a Class 3 felony, for which he received a two-year sentence. The State also described Mr. McMurtry's misdemeanor history, including driving on a suspended license, criminal trespass to a vehicle, and cannabis possession.

¶ 20    Defense counsel countered that the surviving witness, Mr. Brittman, failed to identify Mr. McMurtry. Counsel also pointed out that Mr. Brittman indicated two people were in the front of the vehicle, but he could not positively identify which one did the shooting.

¶ 21    Defense counsel argued that the evidence at trial would show that Mr. Fields was the aggressor and had a gun in his vehicle. Moreover, Ms. House-McMurtry had three children and a female friend in the back seat of her vehicle at the time that they were cut off.

¶ 22    Defense counsel argued that the "only evidence whatsoever" that Mr. McMurtry was part of the shooting came from the statement Mr. McMurtry provided to police when they interrogated him after he had invoked his right to an attorney. Defense counsel also pointed out that he gave several statements during the six-hour interrogation, including admitting involvement in firing a weapon that night, but also stating that the passenger was the shooter that struck Mr. Fields.

¶ 23 Defense counsel disputed that Mr. McMurtry was a safety risk, submitting character letters—including letters that are in the record on appeal written by his mother-in-law, goddaughter, wife, pastor, and a coworker. Counsel informed the court that Mr. McMurtry was employed and was featured on ABC 7 News for his involvement in a neighborhood organization.

¶ 24 Finally, defense counsel argued that electronic monitoring could satisfy the State's desire to keep the community safe in a less restrictive way than confinement and would still ensure Mr. McMurtry's appearance in court.

¶ 25 The circuit court ruled that the facts as alleged by the State demonstrated that the proof was evident and the presumption great that Mr. McMurtry committed the alleged offenses, making him eligible for pretrial detention.

¶ 26 The court further concluded that the State had met its burden in proving that Mr. McMurtry posed a real and present threat to the safety of the community and that clear and convincing evidence demonstrated that no condition or combination of conditions could mitigate the risk of harm or ensure Mr. McMurtry's appearance for later hearings. The court considered electronic monitoring but found that it would afford insufficient protection.

¶ 27 The court entered a pretrial detention order consistent with these findings that called for Mr. McMurtry to be remanded to the custody of the Cook County sheriff pending trial.

¶ 28                                      II. JURISDICTION

¶ 29 The circuit court entered its order granting the State's petition for pretrial detention on November 2, 2023, and Mr. McMurtry filed a timely notice of appeal from that order on November 16, 2023. We have jurisdiction over this appeal under section 110-6.1(j) of the Code (725 ILCS 5/110-6.1(j) (West 2022)) and Illinois Supreme Court Rule 604(h) (eff. Oct. 19, 2023), governing appeals from orders denying the pretrial release of a criminal defendant.

¶ 30                                    III. ANALYSIS

¶ 31     Section 110-6.1(e) of the Code (725 ILCS 5/110-6.1(e) (West 2022)) provides that "[a]ll defendants shall be presumed eligible for pretrial release." The State must seek pretrial detention by filing a timely, verified petition. *Id.* § 110-6.1(a), (c). To obtain that relief, the State must prove by clear and convincing evidence (1) that "the proof is evident or the presumption great" that the defendant committed a qualifying offense, (2) that the defendant "poses a real and present threat to the safety of any person or persons or the community" (the dangerousness standard), and (3) that "no condition or combination of conditions" set forth in section 110-10(b) of the Code can mitigate against the "defendant's willful flight" or the real and present threat to the safety of the community based on the specific articulable facts of the case. *Id.* §§ 110-6.1(e)(1)-(3), 110-10(b). Either side "may present evidence *** by way of proffer based upon reliable evidence." *Id.* § 110-6.1(f)(2).

¶ 32     Section 110-6.1 of the Code does not establish a standard of review for orders granting, denying, or setting conditions of pretrial release. We typically afford great deference to the circuit court's factual findings, however, and will reverse them only if they are against the manifest weight of the evidence. *People v. Hackett*, 2012 IL 111781, ¶ 18. This is the standard we now apply to the court's findings that Mr. McMurtry committed the alleged offense and that the State met its burden of proof on the dangerousness standard.

¶ 33     As to the court's decision regarding whether there are any conditions of release that could mitigate that risk, we believe an abuse of discretion standard is most appropriate. Courts are "endowed with considerable discretion" where, as here, they are called upon to weigh and balance a multitude of factors and arrive at a decision that promotes not only "principles of fundamental fairness" but "sensible and effective judicial administration." *Czarnecki v. Uno-Ven Co.*, 339 Ill. App. 3d 504, 508 (2003) (noting that this is the standard of review when a court rules on a

*forum non conveniens* motion). Abuse of discretion is also the standard we have historically used to review bail appeals under Rule 604(c)(1). *People v. Inman*, 2023 IL App (4th) 230864, ¶ 10. "An abuse of discretion occurs when the circuit court's decision is 'arbitrary, fanciful or unreasonable,' or where 'no reasonable person would agree with the position adopted by the [circuit] court.' " *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9 (quoting *People v. Becker*, 239 Ill. 2d 215, 234 (2010)).

¶ 34   Here, Mr. McMurtry asserts that (1) the State failed to meet its burden of demonstrating that "the proof is evident or the presumption great" that he committed the qualifying offense, (2) the State failed to meet the dangerousness standard, and (3) that electronic monitoring would mitigate any alleged threat to the community or risk of flight.

¶ 35   To meet its burden and connect Mr. McMurtry to the scene of the crime, Mr. McMurtry argued that the State improperly relied on the statement he gave to police after invoking his right to counsel. The Pretrial Fairness Act provides that although a "defendant may not move to suppress evidence or a confession" at a pretrial detention hearing, "evidence that proof of the charged crime may have been the result of an unlawful search or seizure, or both, or [obtained] through improper interrogation, is relevant in assessing the weight of the evidence against the defendant." 725 ILCS 5/110-6.1(f)(6) (West 2022); see also *id.* § 110-5(2) (a court "may consider the admissibility of any evidence sought to be excluded").

¶ 36   While it is necessary to consider the circumstances under which Mr. McMurtry's statement was made, there was considerable evidence beyond the statement. The POD camera footage, video surveillance footage from the Family Dollar, statements from Mr. McMurtry's coworker, Mr. McMurtry's cell phone location data, and the fact that his messages and calls from March 4 were deleted were all part of the State's proffer. Mr. McMurtry did not argue that any of this additional

evidence was improperly obtained. Even absent the videotaped statement, this other proffered evidence was a sufficient basis to support a finding that the proof was evident and the presumption great that Mr. McMurtry committed the alleged offense.

¶ 37    Mr. McMurtry also argues that we should reverse the circuit court's finding that he met the dangerousness standard. To meet the dangerousness standard, the parties agree that the circuit court may consider (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence involving a weapon; (2) the defendant's history and characteristics; (3) the identity of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to a weapon; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or supervised release from custody; and (9) any other factors including those listed in section 110-5 of the Pretrial Fairness Act. *Id.* § 110-6.1(g).

¶ 38    In his brief on appeal, Mr. McMurtry points out that he is not known to be violent, to possess, or even have access to firearms. He has participated in an anti-violence community based program, has worked with several life coaches to "turn his life around," has obtained a high school diploma, has a consistent employment history, runs his own lawn care business, and takes care of his aging grandmother. He does not have violence in his criminal background and his most recent felony conviction was for a traffic offense over 10 years ago. Mr. McMurtry also notes the many character letters that were submitted to the circuit court and are part of the record on appeal. The circuit court specifically mentioned these letters in ruling on the detention petition.

¶ 39    But as the circuit court pointed out, "the allegations are that [Mr. McMurtry committed] violence on the public way, almost in some sort of old wild west kind of shootout kind of thing." Despite these mitigating factors, which were vigorously presented to the circuit court, we cannot say that it was against the manifest weight of the evidence to consider Mr. McMurtry a present threat to the safety of the community based on the specific articulable facts of this case.

¶ 40    Mr. McMurtry has also not convinced us that the circuit court abused its discretion in denying him release with electronic monitoring. Defense counsel argued that Mr. McMurtry has a history of consistent court appearances. But as the court stated, the facts "as they allegedly unfolded here" included that Mr. McMurtry "went from his place of employment out to shoot someone," and electronic monitoring would not "be a sufficient measure under those set of circumstances."

¶ 41    Given the seriousness of the charged offenses and the fact that they were prompted by the normal everyday occurrence of being cut off in traffic, we are unable to conclude that the circuit court's rejection of this alternative to pretrial detention was an abuse of discretion.

¶ 42                                IV. CONCLUSION

¶ 43    For the above reasons, we affirm the circuit court's orders granting the State's petition for pretrial detention. The mandate in this case shall issue immediately.

¶ 44    Affirmed. Mandate to issue immediately.