SUBSTITUTE OPINION
THE COURT’S PREVIOUS OPINION ISSUED NOVEMBER 4, 2015 IS HEREBY WITHDRAWN
BURDICK, Justice.
This case is before the Court on a petition for review. The magistrate granted Neal’s motion to suppress; on appeal the district court reversed, and the Court of Appeals affirmed. We reverse the district court.
BACKGROUND
Shortly before midnight on November 14, 2012, Boise Police Officer Ryan Thueson began following Nathan David Neal in a patrol car. Thueson observed Neal drive his pickup onto, but not across, the line at the edge of the roadway (the “fog line”) near the intersection of State Street and Ellen’s Ferry Drive. Thueson continued to follow Neal until, about one mile further west, near the State Street intersection with Gary Lane, he saw Neal again drive onto, but not across, the line at the edge of the roadway. According to Officer Thueson’s original report, at the time he observed Neal drive onto the fog line twice. Thueson learned later that there is no fog line near Gary Lane and the line actually marks a bicycle lane. Thueson stopped Neal after he turned right onto Gary Lane. This traffic stop led to Neal’s arrest for driving under the influence of alcohol. He was not ticketed for any traffic violations.
Neal filed a motion to suppress, claiming the officer lacked reasonable articulable suspicion of criminal activity to justify a traffic stop. The State argued the officer observed both a misdemeanor (Boise City Code section 10-10-17, which prohibits driving upon a bicycle lane) and an infraction (Idaho Code section 49-637, which requires drivers to maintain a single lane of travel), and that these observations justified the stop. The State also argued that observing these two instances of driving onto the line on the right, close to midnight, gave the officer reasonable suspicion that the driver was intoxicated, which also justified the stop. Thueson observed no other traffic infractions, testifying that Neal’s driving was otherwise “completely appropriate,” and that the only thing that caused him to stop the vehicle was the two instances of Neal’s driving onto the line to his right.
After a hearing and reviewing briefs, the magistrate granted Neal’s motion to suppress. The magistrate held there was no traffic violation justifying the stop because Neal did not cross the line and enter another lane. The magistrate also held that driving onto an alleged fog line two times did not create a driving pattern outside the broad *442 range of normal driving behavior, so the officer did not have reasonable suspicion of DUI. Finally, the magistrate found there was no evidence the officer’s observations occurred in Boise, so there was no violation of Boise City Code.
The State appealed, and the district court reversed. The district court held that “[a] vehicle has not maintained its lane and is not in its lane, if it is on the lane markings.” Thus the district court found that the fog line is not part of the lane of travel. The district court also held that Neal had violated the Boise City ordinance prohibiting entry into a bicycle lane. Although the magistrate had found there was no evidence the incidents occurred in Boise, the district court found the conduct did occur in Boise. The district court held that by driving onto the bicycle lane marker, Neal violated a Boise City ordinance prohibiting driving in a bicycle lane. Thus, the district court found that the bicycle lane marker is part of the bicycle lane. The district court ultimately concluded that the officer had reasonable suspicion that both “the statute and ordinance were violated by Mr. Neal’s driving upon the fog line and upon the bike lane marker.” The district court agreed with the magistrate that Neal’s driving pattern was not sufficiently outside the normal range of driving behavior to constitute reasonable suspicion that he was driving while intoxicated, concluding that the suspected traffic violations justified the stop. The district court reversed the magistrate’s decision granting Neal’s motion to suppress.
Neal appealed, and the Court of Appeals affirmed, ruling that driving on, but not across, an alleged fog line on the roadway violates the state statute requirement that a vehicle remain within its lane. This Court granted Neal’s petition for review.
STANDARD OF REVIEW
When a case comes before this Court on a petition for review following a Court of Appeals opinion, this Court, though giving serious consideration to the reasoning of the Court of Appeals, directly reviews the lower court’s decision. State v. Herren, 157 Idaho 722, 724, 839 P.3d 1126, 1129 (2014). “This Court does not review the decision of the magistrate court.” Pelayo v. Pelayo, 154 Idaho 855, 859, 303 P.3d 214, 218 (2013). “Rather, we are ‘procedurally bound to affirm or reverse the decisions of the district court.’ ” Id. (quoting State v. Korn, 148 Idaho 413, 415 n. 1, 224 P.3d 480, 482 n. 1 (2009)). We review the trial court’s record to determine whether there is substantial and competent evidence to support the magistrate’s findings of fact and whether the magistrate’s conclusions of law follow from those findings. Id. “The interpretation of a statute is a question of law over which this Court exercises free review.” Herren, 157 Idaho at 724, 339 P.3d at 1129.
DISCUSSION
The issue on this appeal is whether the district court erred in concluding that Officer Thueson had reasonable articulable suspicion for the traffic stop. In the trial court, Neal moved to exclude all evidence gathered following the stop on the theorythat the officer had no justification for stopping him and thus violated his Fourth Amendment rights. The magistrate granted the motion, and the district court reversed. Therefore the only issue before the Court is whether the officer had reasonable suspicion of criminal activity at the time of the stop.
“Traffic stops constitute seizures under the Fourth Amendment.” State v. Henage, 143 Idaho 655, 658, 152 P.3d 16, 19 (2007); Delaware v. Prouse, 440 U.S. 648, 653, 99 S.Ct. 1391, 1395-96, 59 L.Ed.2d 660, 667 (1979). Nevertheless, “[l]imited investigatory detentions are permissible when justified by an officer’s reasonable articulable suspicion that a person has committed, or is about to commit, a crime.” State v. Morgan, 154 Idaho 109, 112, 294 P.3d 1121, 1124 (2013). Thus there are two possible justifications for a traffic stop — the officer has reasonable suspicion that a driver has committed an offense, such as a traffic offense, or the officer has reasonable suspicion of other criminal activity, such as driving under the influence. In this case, the State offered three justifications for the officer’s stop: (1) the officer had reasonable suspicion that Neal committed the offense of violating Ida *443 ho Code section 49-637 by driving onto the fog line; (2) the officer had reasonable suspicion that he committed the offense of driving in violation of Boise City Code section 10-10-17 by driving onto a bicycle marker line; and (3) the officer had reasonable suspicion Neal was driving under the influence because of his “driving pattern.”
As to the violation of a Boise city ordinance, the magistrate found “there was no evidence this occurred in Boise.” An appellate court must defer to the trial court’s findings of fact unless they are clearly erroneous. State v. Tucker, 132 Idaho 841, 842, 979 P.2d 1199, 1200 (1999). If the findings of fact are based on substantial and competent evidence, the appellate court may not disturb those findings. State v. Ray, 153 Idaho 564, 567, 286 P.3d 1114, 1117 (2012). The district court nevertheless found the conduct had occurred in Boise and considered the bicycle lane violation in analyzing the validity of the stop. The district court was an appellate court and thus could not substitute its own findings of fact for the magistrate’s findings. The magistrate’s finding that the state had not proved the incident occurred in Boise was supported by substantial and competent evidence. Therefore, we will not consider the Boise City code violation as justification for the stop.
The only arguments relevant to whether the stop was justified are those reflecting the facts known to the officer at the time he stopped Neal. “The test for reasonable suspicion is based on the totality of the circumstances known to the officer at or before the time of the stop.” Morgan, 154 Idaho at 112, 294 P.3d at 1124. “Reasonable suspicion must be based on specific, articulable facts and the rational inferences that can be drawn from those facts.” State v. Bishop, 146 Idaho 804, 811, 203 P.3d 1203, 1210 (2009). “The suspicion for the stop must be based upon objective information available to the officer when he decided to make the stop, and cannot be bolstered by evidence gathered following the stop.” State v. Emory, 119 Idaho 661, 664, 809 P.2d 522, 525 (Ct. App.1991).
A. Whether the stop was justified by reasonable suspicion of driving while intoxicated.
The State argues that because Officer Thueson, near midnight, observed Neal twice drive onto the line marking the right side of his lane of travel, he could reasonably suspect Neal was driving under the influence (DUI). Both the magistrate and the district court found that driving onto but not across the line twice in one mile was not sufficient to provide reasonable suspicion that Neal was driving while intoxicated. While a driving pattern may give rise to reasonable suspicion of intoxication, the test is whether the driving pattern falls outside “the broad range of what can be described as normal driving behavior.” Emory, 119 Idaho at 664, 809 P.2d at 525 (“An officer may draw reasonable inferences from the facts in his possession.... However, such inferences must still be evaluated against the backdrop of everyday driving experience.”).
We agree with the trial court and the district court. Without more, the two instances of moving onto the fog line are not sufficient to arouse reasonable suspicion of DUI under Idaho precedent. See id. (“[T]he fact that the stop occurred in the early morning hours does not enhance the suspicious nature of the observation.... Emory’s vehicle was in its proper lane and was moving in a straight line down the street. No weaving or crossing of the center dividing line was observed by the officer. Such conduct can hardly be described as suspicious.”); State v. Flowers, 131 Idaho 205, 209, 953 P.2d 645, 649 (Ct.App.1998) (upholding the magistrate court’s conclusion that “While any one of the factors identified ... may not have given rise to a reasonable suspicion standard, all of them taken together do so. The Defendant’s slow speed, hugging of the fog line, weaving in his lane of travel, crossing the fog line to the width of a tire, and then moving left to touch the center line one or two times, all within a mile or two, give rise to reasonable suspicion.”).
The mere touching of lines on roadways does not constitute reasonable suspicion of DUI in other jurisdictions either. See United States v. Colin, 314 F.3d 439, 446 (9th *444 Cir.2002) (car’s touching the right fog line and the center yellow line each for ten seconds after legitimate lane changes did not give officer reasonable suspicion of driving under the influence); United States v. Freeman, 209 F.3d 464, 466-67 (6th Cir.2000) (a motor home’s brief entry into the emergency lane does not constitute probable cause that the driver was intoxicated); United States v. Lyons, 7 F.3d 973, 976 (10th Cir.1993), overruled on other grounds by United States v. Botero-Ospina, 71 F.3d 783, 786-87 (10th Cir.1995) (“[I]f failure to follow a perfect vector down the highway or keeping one’s eyes on the road were sufficient reasons to suspect a person of driving while impaired, a substantial portion of the public would be subject each day to an invasion of their privacy.”); United States v. Wendfeldt, 58 F.Supp.3d 1124, 1130 (D.Nev.2014) (“Although Wendfeldt’s right tires touched the fog line several times, he was not speeding or driving erratically in any way, and his driving posed no danger to any other motorists.”); United States v. Ochoa, 4 F.Supp.2d 1007, 1012 (D.Kan.1998) (single drift onto the shoulder did not justify stopping defendant); State v. Tague, 676 N.W.2d 197, 205-06 (Iowa 2004) (single incident of crossing left edge line for a brief moment did not meet reasonableness test under the state constitution); State v. Binette, 33 S.W.3d 215, 219-20 (Tenn.2000) (occasional drifting from the center of the lane did not amount to reasonable suspicion). Two instances of driving onto the fog line do not create a driving pattern that justifies an investigatory stop of the vehicle for suspicion of DUI.
B. Whether the stop was justified by reasonable suspicion of a violation of Idaho Code section 49-637.
The State argues that the fog lines are not part of the lane of travel and that to drive upon them is to exit the lane of travel. Statutory analysis “must begin with the literal words of the statute; those words must be given their plain, usual, and ordinary meaning; and the statute must be construed as a whole. If the statute is not ambiguous, this Court does not construe it, but simply follows the law as written.” Verska v. Saint Alphonsus Reg’l Med. Ctr., 151 Idaho 889, 893, 265 P.3d 502, 506 (2011). “This Court interprets statutes according to their plain, express meaning and resorts to judicial construction only if the statute is ambiguous, incomplete, absurd, or arguably in conflict with other laws.” Arambarri v. Armstrong, 152 Idaho 734, 739, 274 P.3d 1249, 1254 (2012). “Where the language is unambiguous, the clearly expressed intent of the legislative body must be given effect, and there is no occasion for a court to construe the language.” Friends of Farm to Mkt. v. Valley Cnty., 137 Idaho 192, 197, 46 P.3d 9, 14 (2002). “An unambiguous statute would have only one reasonable interpretation. An alternative interpretation that is unreasonable would not make it ambiguous.” Verska, 151 Idaho at 896, 265 P.3d at 509. The statute at issue here, “Driving on highways laned for traffic,” provides as follows:
Whenever any highway has been divided into two (2) or more clearly marked lanes for traffic the following, in addition to all else, shall apply:
1. A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety.
Idaho Code § 49-637.
Title 49 of the Idaho Code defines the terms used in the statutes within that title. None of the terms defined by statute or areas excluded by statute refers to lane markers. “Highway” means “the entire width between the boundary lines of every way ... with jurisdiction extending to the adjacent property line, including sidewalks, shoulders, berms and rights-of-way not intended for motorized traffic.” I.C. § 49-109(5). (“Highway” is synonymous with “street.” Id.) “Roadway” means “that portion of a highway improved, designed or ordinarily used for vehicular travel, exclusive of sidewalks, shoulders, berms and rights-of-way.” I.C. § 49-119(19). A “sidewalk” is “that portion of a street between the curb lines, or the lateral lines of a roadway, and the adjacent property lines intended for use by pedestrians.” I.C. § 49-120(12). Thus the edge of the roadway is the curb or sidewalk. *445 Idaho Code does not define “shoulder.” However, Webster’s defines “shoulder” as “the part of a roadway outside of the traveled way on which vehicles may be parked in an emergency.”[1] Shoulder, Webster’s Third New International Dictionary (2002). “Lane of travel” or “traffic lane” means “that portion of the roadway for movement of a single line of vehicles.” I.C. § 49-121(4). Therefore, the statute does not provide any definitions that clarify what is meant by “within a single lane,” or, more to the point, “as nearly as practicable entirely within a single lane.” Because we are unable to discern on the face of the statute the meaning of this phrase, we find that it is reasonably susceptible of more than one meaning and therefore is ambiguous.
“In construing a statute, this Court will not deal in any subtle refinements of the legislation, but will ascertain and give effect to the purpose and intent of the legislature, based on the whole act and every word therein, lending substance and meaning to the provisions.” In re Estate of Wiggins, 155 Idaho 116, 119, 306 P.3d 201, 204 (2013) (quoting Curlee v. Kootenai Cnty. Fire & Rescue, 148 Idaho 391, 398, 224 P.3d 458, 465 (2008)). “Statutes must also be construed as a whole without separating one provision from another.” Izaguirre v. R & L Carriers Shared Sens., LLC, 155 Idaho 229, 234, 308 P.3d 929, 934 (2013). “Language of a particular section need not 'be viewed in a vacuum. And all sections of applicable statutes must be construed together so as to determine the legislature’s intent.” Lockhart v. Dep’t of Fish and Game, 121 Idaho 894, 897, 828 P.2d 1299, 1302 (1992). “Statutes and ordinances should be construed so that effect is given to their provisions, and no part is rendered superfluous or insignificant.” Friends of Farm, 137 Idaho at 197, 46 P.3d at 14.
[C]ourts should presume that a statute was not enacted to work a hardship or to effect an oppressive result. Constructions that would render the statute productive of unnecessarily harsh consequences are to be avoided. Accordingly, any ambiguity in a statute should be resolved in favor of a reasonable operation of the law.
Lawless v. Davis, 98 Idaho 175, 177, 560 P.2d 497, 499 (1977).
The Idaho statute at issue is in the center of a series of statutes dealing with managing traffic safety vis-a-vis other vehicles. Idaho Code sections 49-630 through 49-644 all address topics having to do with sharing the road with other drivers — for example, which side to drive on and applicable exceptions (I.C. §§ 49-630, 635, 636); rules for passing other vehicles (I.C. §§ 49-631-634); rights of way associated with turning (I.C. §§ 49-639-644); and prohibitions on following too closely (I.C. § 49-638). The fact that this portion of Idaho’s motor vehicle code contains all the rules relating to rights of way and safety management regarding other vehicles supports the construction that section 49-637(1) regulates the interaction of traffic between lanes, not a driver’s interaction with the sidewalk, curb, or shoulder.
Idaho Code section 49-630(1) requires that drivers drive on the right half of the roadway. State v. Slater, 136 Idaho 293, 298, 32 P.3d 685, 690 (Ct.App.2001). Put another way, section 49-630(1) does not prohibit driving anywhere on the right half of the roadway except sidewalks, shoulders, berms, and rights-of-way. There is no mention of the edge, the edge line, the fog line, or any other kind of marker. Construing this section together with 49-637(1), so that they are not in conflict, leads to the conclusion that section 49-637(1) does not prohibit driving on an edge line in the roadway. There was no allegation here that Neal was driving on the shoulder; therefore, he was still in the roadway.
In fact, the edge line may or may not even be present on the roadway; its purpose is not to create a lane boundary but to inform the driver of the road’s edge so that under certain conditions the driver can safely main *446 tain his or her position on the roadway.[2] Because the edge lines are not always present, if they are not part of the lane, then the usable portion of the lane would actually be widening or narrowing depending on whether there is a line present. Where the lines are absent, the edge of the road is considered the curb, and it is an unreasonable interpretation to conclude that where there is a stripe near the edge, the inside of the stripe marks the limits of where a driver’s tires can go, but where it is absent, the curb — which would be located at the outer edge of the painted line — marks those limits.
Further, the motor vehicle code in general often encourages or requires drivers to move to the right. Therefore, driving onto the right edge marker would not seem to be a safety concern. For instance, when driving at less than normal speed of traffic, one must drive “as close as practicable to the right-hand curb or edge of the highway____” I.C. § 49-630(2). When turning, “[b]oth the approach for a right turn and the right turn shall be made as close as practicable to the right-hand curb or edge of the roadway.” 1.C. § 49-644(1). A driver must immediately drive “as close as possible to the nearest edge or curb of the highway” upon the approach of police vehicles using audible or visible signals. I.C. § 49-625. Movement toward the right edge of the highway, roadway, or main traveled way is not prohibited in the motor vehicle code except where the driver must yield to someone else who has the right of way.
This comports with the overall purpose of the motor vehicle code, which “was designed to protect motorists and other persons using Idaho’s roads from a particular harm caused by persons operating motor vehicles thereon.” Ahles v. Tabor, 136 Idaho 393, 396, 34 P.3d 1076, 1079 (2001), abrogated on other grounds by Verska v. Saint Alphonsus Reg’l Med. Ctr., 151 Idaho 889, 265 P.3d 502 (2011). Thus there does not appear to be any support for interpreting “as nearly as practicable within a single lane” to exclude the edge of the roadway; in fact where the edge of the roadway is mentioned in the code, its use is encouraged.
It is not a reasonable interpretation of the statute to conclude that the legislature intended to prohibit drivers from merely touching the line painted at the edge of the roadway. First, the plain meaning of “whenever any highway has been divided into two (2) or more clearly marked lanes” is that the statute only applies to highways with at least two lanes of travel and excludes one-lane roads. Yet one-lane roads also have edges and may be marked with fog lines. It is not a reasonable interpretation to conclude that the legislature would prohibit movement upon the fog line only on multiple-lane roads. If the legislature intended to prohibit driving on top of the fog line, then the statute would also apply to one-lane roads.
Second, if the fog line is not part of the lane of travel, then it must be part of whatever lies just beyond the roadway: the shoulder, the curb, or the sidewalk. Yet the relevant statutory definitions do not support this result. Nothing in the definitions of “highway,” “roadway,” “lane of travel,” or “sidewalk” supports the State’s position that the inside-edge of the painted fog line marks the outside boundary of the lane of travel. None of the terminology in the statute or the definitions of terms suggests that the legislature intended to carve out a “no-man’s land” at the edge of the roadway upon which no vehicle can drive. Rather, if an area is not the shoulder or the sidewalk or the curb, it is, according to statutory definition, the roadway. Fog lines are not painted on the sidewalks, curbs, shoulders, or beyond the roadway’s edge; they are painted onto the roadway itself.
Further, the cases that have found a lane breach constituted a violation of identically worded statutes generally involve a driver’s breaching of the line separating lanes of traí *447 fic and involve crossing, not merely driving onto, the lines. Very few cases have found that merely touching the fog, or edge, line violates the statute; generally, there must be more. See, e.g., United States v. Alvarado, 430 F.3d 1305 (10th Cir.2005) (crossing the fog line and driving onto the shoulder); United States v. Williams, 945 F.Supp.2d 665, 672 (E.D.Va.2013) (repeated touching and weaving within lane); People v. Geier, 407 Ill.App.3d 553, 348 Ill.Dec. 552, 944 N.E.2d 793, 799 (2011) (all four of vehicle’s wheels crossed the fog line and driver crossed center line once). But see State v. McBroom, 179 Or.App. 120, 39 P.3d 226, 229 (2002) (driving with tires on the center lane marker for 300 feet violated the statute).
“Constructions that would render a statute productive of unnecessarily harsh consequences are to be avoided and any ambiguity in a statute should be resolved in favor of a reasonable operation of the law.” Higginson v. Westergard, 100 Idaho 687, 691, 604 P.2d 51, 55 (1979). We find that it would be an unnecessarily harsh interpretation of the statute to conclude that a driver can be pulled over, cited, and possibly then subject to intrusive searches, for merely touching the line at the edge of the roadway. Further, when statutory language is ambiguous, we examine the proffered interpretations and consider the “context in which the language is used, the evils to be remedied and the objects in view.” Callies v. O’Neal, 147 Idaho 841, 847, 216 P.3d 130, 136 (2009). The evil to be remedied in this statute is to prevent dangerous, unsafe movement out of a lane of traffic and into another lane of traffic.
We hold that driving onto but not across the line marking the right edge of the road does not violate Idaho Code section 49-637 and therefore the officer’s stop of Neal was not justified.
CONCLUSION
We reverse the decision of the district court reversing the magistrate’s granting of Neal’s motion to suppress. We remand to the trial court.
Chief Justice J. JONES and KIDWELL, J., Pro tern concur.

. Title 40 of the Idaho Code, "Highways and Bridges,” defines the term "main traveled way” as "the portion of a roadway for the movement of vehicles, exclusive of shoulders.” I.C. § 40-114(1). This definition is essentially the inverse of the Webster's definition of "shoulder,” lending support for the appropriateness of using the Webster's definition of "shoulder” in the absence of a statutory definition.

. "Edge line markings have unique value as visual references to guide road users during adverse weather and visibility conditions.... Wide solid edge line markings may be used for greater emphasis .... Edge line markings may be excluded, based on engineering judgment, for reasons such as if the traveled way edges are delineated by curbs, parking, or other markings.” Manual on Uniform Traffic Control Devices, 371, § 3B.06, 07, U.S. Dept. of Transportation (2009, Rev. 2012).