# Illinois Official Reports

## Appellate Court

---

### *People v. Mueller*, 2018 IL App (2d) 170863

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. AMY LYNN MUELLER, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-17-0863 |
| Filed<br>Modified upon<br>denial of rehearing | December 13, 2018<br><br>January 8, 2019 |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, Nos. 17-DT-109, 17-TR-4537; the Hon. Joel D. Berg, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Patrick D. Kenneally, State's Attorney, of Woodstock (Patrick Delfino, David J. Robinson, and Stephanie Hoit Lee, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Matthew J. Haiduk, of Geneva, for appellee. |

Panel            JUSTICE McLAREN delivered the judgment of the court, with opinion.
Presiding Justice Birkett and Justice Spence concurred in the judgment and opinion.

**OPINION**

¶ 1       Defendant, Amy Lynn Mueller, was charged with driving under the influence of alcohol (625 ILCS 5/11-501(a)(1), (a)(2) (West 2016)) and improper lane usage (ILU) (*id.* § 11-709(a)). She moved to quash her arrest and suppress evidence, contesting the initial stop of her vehicle for ILU. The trial court granted the motion and denied the State's motion to reconsider. The State appeals. We affirm.

¶ 2                           I. BACKGROUND

¶ 3       At the hearing on defendant's motion, the sole witness was Trent Raupp, a McHenry County sheriff's deputy. He testified as follows. On February 11, 2017, at 1:40 a.m., he was on patrol in the area of U.S. Route 12 and Illinois Route 31. Defendant's Jeep was stopped in the left-turn lane at a light at the intersection. When the light turned green, she turned left onto Route 31. There was nothing unusual in the turn. Raupp followed defendant. She was not speeding.

¶ 4       Raupp testified that, as defendant drove south, he observed her commit three lane violations. The first time, the Jeep's driver's-side tires rolled onto the yellow center line and touched it for a few seconds. The vehicle did not cross the line but returned to its lane. Raupp could not recall whether the move back was abrupt or smooth.

¶ 5       Raupp testified that the second time was when, after traveling some distance, the Jeep's passenger's-side tires touched the white fog line but never crossed over it. Raupp was asked, "But it never left its lane; correct?" He responded, "Correct, sir." The touching was only "temporary."[1] The Jeep moved back toward the center of the lane without doing anything unusual; Raupp could not say that the move was abrupt. The third violation was when the Jeep's passenger's-side tires again rode on the white fog line. This was "momentary." The tires never crossed over the line.

¶ 6       Other than the three incidents of what he regarded as ILU, Raupp did not see defendant violate any traffic laws. He acknowledged that the stretch of road on which he followed defendant was not straight and had "some twists and turns." Also, he acknowledged that the video system in his squad car had been inoperable since October 2016 and that he had not requested any repair. Based on the three incidents alone, he stopped the Jeep nearly a mile from where he first saw it. The trial court denied the State's motion for a directed finding, and the State rested without presenting additional evidence.

---

[1]In agreeing with defendant's characterization of the touching as "temporary," Raupp flippantly added, "It's not still doing it to this day." The trial court admonished him, "You do yourself no favors when you testify like that."

¶ 7 Defendant argued that Raupp had had no basis to stop her for touching a center or fog line. The State maintained that Raupp had had a reasonable suspicion to stop defendant for ILU. The State did not raise any other basis for the stop, such as erratic driving or weaving within a lane. It contended, however, that under *Heien v. North Carolina*, 574 U.S. ___, 135 S. Ct. 530 (2014), even had Raupp gotten the law wrong, his mistake was reasonable and therefore did not invalidate the stop.

¶ 8 The trial court held for defendant, explaining as follows. *Heien* is limited to extraordinary situations where the law gives police no guidance. Here, *People v. Hackett*, 2012 IL 111781, provided guidance by holding that a stop for ILU is valid if an officer sees a driver deviate from his or her established lane of travel. Raupp, however, saw no such deviation, because, the judge reasoned, "[t]o touch the center line or the fog line is not to leave your lane. It is to remain within your lane, all be it [*sic*] up against the outer-most [*sic*] boundaries thereof."

¶ 9 The State moved to reconsider. It argued in part that *Hackett* held that crossing the yellow line or the fog line violates the ILU statute but did not address whether touching either line without crossing it also violates the law. The State argued alternatively that, under *People v. Greco*, 336 Ill. App. 3d 253, 257 (2003), defendant's erratic driving within her lane provided a reasonable suspicion to stop her. The State also reiterated that at worst Raupp had made a reasonable mistake of law, validating the stop.

¶ 10 The trial court denied the State's motion to reconsider. In a lengthy order, the court stated as follows. Raupp's testimony had been "problematic. He either didn't remember important details or was flippant with [defendant's] attorney." "In any event," however, "Deputy Raupp never saw the Jeep's tires cross over either the yellow center line or the white fog line, nor did he observe any jerky or erratic driving corrections. The three lane-line touches occurred over a mile-long 'twist[ing] and turn[ing] stretch of road.' "

¶ 11 The court's order continued as follows. Under *Hackett*, to stop defendant for ILU, Raupp had needed a reasonable suspicion that she had deviated from her lane. Whether she had been driving as nearly as practicable within her lane was not pertinent to reasonable suspicion. See *Hackett*, 2012 IL 111781, ¶ 28; *People v. Flint*, 2012 IL App (3d) 110165, ¶ 15. No Illinois case had held that merely driving on the center line or the fog line creates a reasonable suspicion of ILU. In *People v. Smith*, 172 Ill. 2d 289, 297 (1996), the court stated, "[W]hen a motorist crosses over a lane line and is not driving as nearly as practicable within one lane, the motorist has violated the statute." In *Flint*, 2012 IL App (3d) 110165, ¶¶ 8, 17, the court held that the officer had a reasonable suspicion to stop the defendant for ILU after observing his vehicle's tire cross completely over the center line. In *People v. Leyendecker*, 337 Ill. App. 3d 678, 682 (2003), this court stated that *Smith* required the trial court to consider "whether [the officer] had a reasonable suspicion that *** [the] defendant had crossed over a lane line." Thus, the trial court concluded, "current law require[d] evidence that [defendant's] tires crossed over the lane lines" to create a reasonable suspicion of ILU. That had not occurred.

¶ 12 Turning to the State's argument based on *Greco*, the court first found that it was forfeited, as the State had not raised it until its motion to reconsider. Second, the court held that the argument lacked merit anyway. Raupp had never testified that he saw defendant weaving within her lane or driving erratically, and he could not say that her deviations were abrupt or how long they had lasted. Moreover, she had been driving on a curved road in the darkness of the early morning.

¶ 13    Finally, the court held, *Heien* and *People v. Gaytan*, 2015 IL 116223, which adopted *Heien*'s holding, did not apply. In those cases, the statutes involved were ambiguous; here, the ILU statute clearly required a lane deviation, which meant crossing over a line. Thus, Raupp's mistake of law had not been reasonable. The court denied the motion to reconsider. The State appealed (see Ill. S. Ct. R. 604(a) (eff. July 1, 2017)).

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, the State contends that (1) the trial court applied the wrong legal standard to the motion to quash and suppress, (2) the court erred in holding that there was no reasonable suspicion to stop defendant for ILU, (3) even if defendant had not actually violated the ILU statute, Raupp's mistake of law in believing otherwise was reasonable, thus giving him a reasonable suspicion to stop her, and (4) alternatively, under *Greco*, Raupp had a reasonable suspicion to stop defendant for driving erratically.

¶ 16    The State's first argument need not concern us. We review the trial court's judgment, not its reasoning, and we may affirm on any basis called for by the record. See *People v. Cleveland*, 342 Ill. App. 3d 912, 915 (2003). The State's fourth argument need not concern us either. The State concedes that it forfeited the *Greco* argument by failing to timely raise it. See *Hanley v. City of Chicago*, 343 Ill. App. 3d 49, 54 (2003). We decline to disregard the forfeiture, as the State's tardiness in raising the *Greco* argument denied defendant the opportunity to introduce evidence against it. See *In re Marriage of Rodriguez*, 131 Ill. 2d 273, 279 (1989). We note that the trial court found the argument both forfeited and meritless on the facts.

¶ 17    We turn to the State's second and third arguments. The State contends that, under section 11-709(a) of the Illinois Vehicle Code (625 ILCS 5/11-709(a) (West 2016)), a person commits ILU when his or her vehicle touches the yellow line or the fog line, even if it never crosses over the line. The State contends further that, even if section 11-709(a) does not make this conduct an offense, Raupp reasonably believed that it did and therefore, under *Heien*, had a proper basis to stop defendant. We disagree with both contentions.

¶ 18    Resolving the issues that the State's arguments raise requires us to construe section 11-709(a). The construction of a statute is an issue of law, which we review *de novo*. *Sylvester v. Industrial Comm'n*, 197 Ill. 2d 225, 232 (2001). Our aim is to ascertain and effectuate the legislature's intent, the best indicator of which is the language of the statute. *People v. Pack*, 224 Ill. 2d 144, 147 (2007).

¶ 19    Section 11-709(a) states that, "[w]henever any roadway has been divided into 2 or more clearly marked lanes for traffic," "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." 625 ILCS 5/11-709(a) (West 2016). Although the statute requires a driver to remain entirely within a single lane only as nearly as practicable, it is settled that an officer may stop a vehicle for driving outside its lane for no obvious reason, without further inquiry into practicability. *Hackett*, 2012 IL 111781, ¶¶ 27-28. Thus, the issue here is whether Raupp had a reasonable suspicion that defendant failed to drive "entirely within a single lane" (625 ILCS 5/11-709(a) (West 2016)), either when (1) her driver's-side tires touched, but did not cross, the yellow center line or (2) her passenger's-side tires touched, but did not cross, the white fog line.

¶ 20    The statute does not define "lane" and does not specify whether either a center line or a fog line is part of the "lane" in which the driver is traveling. The trial court relied on *Hackett*, *Smith*, *Flint*, and *Leyendecker*, which, it stated, all held that a person commits ILU only when his or her vehicle crosses the center line or the fog line. However, in none of those cases did the defendant merely touch the line without crossing it. Each motorist crossed the line. See *Hackett*, 2012 IL 111781, ¶ 9; *Smith*, 172 Ill. 2d at 293, 297; *Flint*, 2012 IL App (3d) 110165, ¶¶ 8, 17; *Leyendecker*, 337 Ill. App. 3d at 680. In each case, the court held that crossing the line is ILU, but in no case did it *explicitly* hold that *only* crossing the line is ILU.

¶ 21    Nonetheless, we conclude that the statute is not ambiguous and that Raupp did not have a reasonable basis to stop defendant. Although the Code does not specifically define "lane," it defines "[l]aned roadway" as "[a] roadway which is divided into two or more clearly marked lanes for vehicular traffic." 625 ILCS 5/1-136 (West 2016). As a matter of established usage, a "lane" is "a strip of roadway for a single line of vehicles." Merriam-Webster's Collegiate Dictionary 652 (10th ed. 2001). As these definitions suggest, in common practice, a traffic "lane" is one in which vehicles legally and customarily are driven toward their destinations. Dividing lines or boundary lines, by contrast, are legally and customarily used only to change lanes, turn, or make other maneuvers (see 625 ILCS 5/11-709(a) (West 2016) (vehicle "shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety")). If a line's purpose is to divide two lanes, then a vehicle has not changed lanes until it has crossed the line.

¶ 22    We note that, in *Hackett*, the supreme court quoted *Smith*: "[W]hen a motorist crosses over a lane line and is not driving as nearly as practicable within one lane, the motorist has violated the [ILU] statute." *Hackett*, 2012 IL 111781, ¶¶ 16, 25, 26 (quoting *Smith*, 172 Ill. 2d at 297. We recognize that the court cited this language in the context of rejecting the argument that section 11-709(a) requires more than a mere lane change, such as either endangering others, as the defendant contended (*id.* ¶ 25), or driving " 'for some reasonably appreciable distance in more than one lane of traffic,' " as the appellate court held (*id.* ¶ 26 (quoting *People v. Hackett*, 406 Ill. App. 3d 209, 214 (2010))). Nonetheless, the court was also addressing the language of the statute and chose at least to imply that crossing a line, and not merely touching it, is needed for ILU.

¶ 23    Moreover, this interpretation is consistent with the official rules of the road, in Illinois and elsewhere. The rules issued by our Secretary of State's office, of which police officers as well as drivers are on notice, state in pertinent part as follows. "Yellow center *lines separate lanes of traffic* moving in opposite directions." (Emphasis added.) Ill. Sec'y of State, 2018 Illinois Rules of the Road 76 (Mar. 2018)), https://www.cyberdriveillinois.com/publications/pdf_publications/dsd_a112.pdf. [https://perma.cc/3GA7-MJGH]. "When there is a *solid and a broken yellow line separating two lanes of traffic* moving in opposite directions, a driver may pass only when the broken yellow line is nearest the driver's lane." (Emphasis added.) *Id.* at 77. The "U.S. Road Rules" at DMV.org (a privately owned website) contain similar language. "White lines are used to separate lanes of traffic moving in the same direction." *U.S. Road Rules*, DMV.org, https://www.dmv.org/travel/us-road-rules.php (last visited Oct. 31, 2018) [https://perma.cc/7U5Y-H423]. Finally, the Federal Highway Administration's Manual on Uniform Traffic Control Devices states, "White lines separate lanes for which travel is in the same direction." U.S. Dep't of Transportation, Fed. Highway Admin., United

- 5 -

States Pavement Markings, preface (2002), https://mutcd.fhwa.dot.gov/services/publications/fhwaop02090/uspavementmarkings.pdf [https://perma.cc/ZEB7-J54T].

¶ 24 Persuasive foreign authority supports our holding. In *State v. Neal*, 362 P.3d 514 (Idaho 2015), the Idaho Supreme Court interpreted a section of the Idaho Code essentially identical to the one here (*id.* at 519; see Idaho Code Ann. § 49-637 (West 2014)). The issue was whether the police had a reasonable suspicion to stop the defendant for ILU after he drove his vehicle onto but not across the fog line. As here, the statute did not clarify whether a "lane" included the fog line. *Neal*, 362 P.3d at 520. The court stated generally that the ILU statute was ambiguous. *Id.*

¶ 25 Nonetheless, the court held that "[i]t is not a reasonable interpretation of the statute to conclude that the legislature intended to prohibit drivers from merely touching the line painted at the edge of the roadway." *Id.* at 521. The court noted the following considerations. First, a section of the Idaho Code required drivers to drive on the right half of the roadway but, although it excluded sidewalks, shoulders, berms, and rights-of-way, it made no mention of fog lines. *Id.* at 520 (citing Idaho Code Ann. § 49-630(1) (West 2014)). Second, not every road has a fog line; for those that do not, the roadway extends to the curb. Thus, a road that does have a fog line would provide a narrower lane of travel than one that does not, an unreasonable disparity. *Id.* at 521. Third, because the vehicle laws often encourage or require drivers to move to the right, "driving onto the right edge marker would not seem to be a safety concern." *Id.* Even in cases involving center or dividing lines, which present greater safety concerns, courts have held that ILU requires actually crossing the line. See *United States v. Colin*, 314 F.3d 439, 444 (9th Cir. 2002).

¶ 26 Although the *Neal* court twice characterized the statute as "ambiguous" (*Neal*, 362 P.3d at 520, 522), it concluded that a contrary interpretation would "*not* [be] *reasonable*." (Emphases added.) *Id.* at 521. Illinois courts define an "ambiguous" statute as one that is "capable of more than one *reasonable* interpretation." (Emphasis added.) *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 25. Therefore, *Neal* provides well-reasoned support for our conclusion that the ILU statute is unambiguous.

¶ 27 We conclude that the statute is unambiguous. Moreover, the meaning of the statute was or should have been within Raupp's knowledge; he was on notice of the rules of the road. Therefore, *Heien* and *Gaytan* do not apply, and the stop cannot be validated as based on a reasonable mistake of law.

¶ 28 In any event, we note that a stop for ILU is valid when "a police officer observes multiple lane deviations, *for no obvious reason*." (Emphasis added.) *Hackett*, 2012 IL 111781, ¶ 28. Here, even if defendant's multiple touches could be considered "lane deviations," the road's "twists and turns" provided an innocent (and obvious) explanation for those brief touches. Thus, under any construction of section 11-709(a), the trial court correctly granted defendant's motion to quash and suppress.

¶ 29 The defendant bears the ultimate burden of proof at a hearing on a motion to suppress. "If a defendant makes a *prima facie* case, the State has the burden of going forward with evidence to counter the defendant's *prima facie* case." *People v. Gipson*, 203 Ill. 2d 298, 307 (2003). Here, defendant made a *prima facie* case that Raupp lacked a reasonable and articulable suspicion to stop her vehicle. Raupp's testimony provided an innocent explanation for the three momentary line touches. We reject the State's argument that three line touches

at night on a curvy road over the course of a mile support a finding of "erratic driving."

¶ 30                                    III. CONCLUSION

¶ 31          We affirm the order of the circuit court of McHenry County.

¶ 32          Affirmed.