2020 IL App (2d) 180488-U
No. 2-18-0488
Order filed February 19, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| CITY OF WHEATON | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 16-DT-2985 |
| | ) | |
| BRENTEZ R. FORD, | ) | Honorable |
| | ) | Paul A. Marchese, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The trial court erred in denying defendant's motion to quash arrest and suppress evidence as the police had no reasonable suspicion to effectuate a stop of defendant's vehicle for improper lane usage. We reverse.

¶ 2    Defendant, Brentez Ford, appeals from his conviction of driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2016)) and improper lane usage (625 ILCS 5/11-709(a) (West 2016)).   Based on this court's holding in *People v. Mueller*, 2018 IL App (2d) 170863, and the trial court's findings indicating that defendant's vehicle's tires could be seen driving on top of the dividing line, we reverse.

¶ 3                                    I. BACKGROUND

¶ 4      On October 28, 2016, at approximately 1:07 a.m., defendant was stopped for a traffic violation by officers with the Wheaton Police Department. Following an investigation and the administration of standardized field sobriety tests (SFSTs), defendant was arrested for DUI and cited for improper lane usage.  The following facts are compiled from testimony and evidence presented to the trial court. We recite only those facts relevant to rendering our decision in this appeal.

¶ 5      On February 23, 2017, defendant filed a motion to quash arrest and suppress evidence. The motion alleged that the officers stopped his vehicle without reasonable suspicion. The trial court held a hearing on defendant's motion on June 7, 2017. Defendant first called Officer Daniel Salzmann (Salzmann) of the Wheaton Police Department to testify.

¶ 6      Salzmann testified that he was working on the date in question. One of his duties on that day was to train Officer Sam Kaufman (Kaufman), who was the driving the squad car. While doing routine traffic patrol, the officers observed defendant's vehicle traveling eastbound on Butterfield Road. There was very little traffic or lighting on Butterfield Road at that time of the evening. As part of Kaufman's training, Salzmann was having him follow the passing vehicles for a distance to see if any traffic violations were committed. This is why they began following defendant's silver 2000 Buick Regal when he passed by the officers' squad car.

¶ 7      Salzmann testified that he did not observe defendant to be exceeding the speed limit, swerving, or in violation of any equipment laws.  After following defendant for approximately 30 seconds from indeterminate distance (somewhere between 30 to 50 yards), Salzmann said that he saw the vehicle "veer right" and cross "the dash white [lines] which separate the curbside lane from the median side lane, and then it quickly corrected itself and went back into the median side

lane." Salzmann said the vehicle "crossed onto the line by about *** six inches, maybe half a foot." He then testified that he observed a second instance of improper lane usage when the car "barely nicked the line and then slowly veered back into his lane." Salzmann then asked Kaufman if he saw any violations take place, to which Kaufman responded that he observed improper lane usage. Kaufman then turned on the lights of the squad car to pull defendant over.

¶ 8     Defendant pulled over appropriately and without incident. A video taken from the squad car was then entered into evidence and played for the court. Salzmann was excused as a witness and the City moved for a directed finding. The trial court noted that the squad car's video was of "bad quality" and that the video "isn't good enough from my perspective to be able to see where the tires are but you can see where the taillights are on the car and they're obviously to the outside of the car where the wheels are, and a portion of those are to the right of the reflective white line." In issuing its finding, the trial court stated that:

> "I find he's over the white line per the officer's testimony and as corroborated by the videotape. And what I mean by 'over it,' he's over the top of it and then over even a little bit beyond that *** into what would be a portion of the right lane from the officer's testimony as corroborated by the videotape. So you have a violation at that point that would make the stop there a reasonable stop.
>
> You have the second move as well. ***[I] think the officer's testimony was credible and it shows that there was improper lane usage.
>
> *** [I]'m going to grant [City of Wheaton's] motion for a directed finding and the defendant's motion is going to be denied."

¶ 9     The matter proceeded to a bench trial on August 23, 2017. Salzmann again was called to testify. His testimony largely mirrored his testimony from the hearing on defendant's motion to

quash arrest and suppress evidence, but at trial he stated that he observed defendant's "passenger side tires veer to the right and cross over the dashed white lines by about 8 to 12 inches and then quickly return back to its lane."

¶ 10    Following the presentation of evidence and the arguments of the parties, the trial court found defendant guilty of DUI and improper lane usage. After again remarking on the poor quality of the squad car video, the trial court stated that

> "You've got to look at it real hard. It corroborates the testimony in terms of what side the taillights are on, where they are as it lines up with the lane markings. So you do see it. It's not horrendous driving. You know, it's not bisecting the white dashed line or anything like that; but you definitely see that it corroborates the officer's testimony with regard to the driving."

¶ 11    On October 18, 2017, defendant filed a motion to reconsider the denial of his motion to suppress evidence. Defendant again argued that there was insufficient evidence to show that he committed improper lane usage. As such, the officers had no reasonable suspicion to stop his vehicle.  The trial court held a hearing on defendant's motion and agreed to watch the video of the incident again, although it was not presented with a transcript of the June 7, 2017, hearing on defendant's original motion to quash. The trial court stated that it "got right up on the TV and watched it closely." The trial court then recounted the following:

> "His wheels are rolling on top of the white line, perhaps over to the other side, but I can't quite make out if it completely makes it over or not, but they're on top of the white line for a period of time.
>
> The defendant's vehicle goes back and then - - back to the left, and then again, for a second time briefly drives on top of the white line. It happens within a very quick span.

And, again, because it's far away, the quality is not perfect *** but you see it on the videotape.

Again, I wasn't afforded a copy of the testimony. I'll accept what's been written in the motion as being an accurate representation. *** But looking at the videotape itself, which I previously reviewed, *** the car goes to the right on top of the right line and then drifts back again. The police officer catches up to him *** and then the *** lights go on. So in summary, that's what it shows.

***

So I have reconsidered it; I've reconsidered the videotape; I've accepted the factual representations in the motion, and I think my ruling is correct. Even it its not hitting the white line, I suppose it's weaving within the lane, but *specifically I'm finding that he does, with his right wheels, drives on top of the white line twice*, so the motion to reconsider is denied." (Emphasis added.)

¶ 12    On January 10, 2018, defendant filed a motion to reconsider the trial court's finding of guilty. After several continuances, the trial court denied defendant's motion following a hearing on June 22, 2018. Sentencing occurred thereafter.

¶ 13    Defendant then filed this appeal on June 25, 2018.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, defendant raises two contentions. First, that the trial court erred in denying his motion to quash arrest and suppress evidence because the officers did not have reasonable suspicion to stop him for improper lane usage. Second, defendant contends that the City of Wheaton failed to prove him guilty beyond a reasonable doubt for both improper lane usage and DUI. We find defendant's first contention to be dispositive.

¶ 16    In reviewing a trial court's ruling on a motion to suppress, the trial court's findings of historical fact are reviewed only for clear error, giving due weight to any inferences drawn from those facts by the fact finder, and reversal is warranted only when those findings are against the manifest weight of the evidence. *People v. Hackett*, 2012 IL 111781, ¶ 18. However, a reviewing court remains free to undertake its own assessment of the facts in relation to the issues and may draw its own conclusions when deciding what relief should be granted. *Hackett*, 2012 IL 111781, ¶ 18. A trial court's ultimate legal ruling as to whether suppression is warranted is subject to *de novo* review. *Id*.

¶ 17    Section 11-709(a) of the Illinois Vehicle Code states that, "[w]henever any roadway has been divided into 2 or more clearly marked lanes for traffic," "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." 625 ILCS 5/11-709(a) (West 2016). Although the statute requires a driver to remain entirely within a single lane only as nearly as practicable, it is settled that an officer may stop a vehicle for driving outside its lane for no obvious reason, without further inquiry into practicability. *Hackett*, 2012 IL 111781, ¶¶ 27-28. However, improper lane usage requires more than merely touching a lane line. *People v. Mueller*, 2018 IL App (2d) 170863, ¶ 22. A vehicle must actually cross over the lane line, into another lane, to qualify as improper lane usage. *Mueller*, 2018 IL App (2d) 170863, ¶ 22.

¶ 18    In *Mueller*, the defendant's vehicle was stopped by an officer after he observed her commit what he described as "three lane violations." *Id*. at ¶ 4. The officer testified that he had followed defendant's vehicle for about a mile and observed her tires briefly contact both the yellow center line and the white fog line, but never cross over either one. *Id*. at ¶¶ 4-5. The officer did not see

defendant violate any other traffic laws. Further, the video system in his squad car was inoperable at the time of the incident. *Id*. at ¶ 6.

¶ 19    In granting the defendant's motion to quash her arrest and suppress evidence, the trial court held that a stop for illegal lane usage is valid if an officer sees a driver deviate from his or her established lane of travel. "To touch the center line or the fog line is not to leave your lane. It is to remain within your lane, all be it [*sic*] up against the outer-most [*sic*] boundaries thereof." *Id*. at ¶ 8. This court affirmed the trial court's decision. We held that the officer lacked a reasonable basis to stop defendant for illegal lane usage because she never left her own lane of travel. "If a line's purpose is to divide two lanes, then a vehicle has not changed lanes until it has crossed the line." *Id*. at ¶ 21.

¶ 20    The present appeal is controlled by *Mueller*. In ruling on defendant's motion to reconsider the denial of his motion to quash arrest and suppress evidence, the trial court determined that defendants "wheels are rolling on top of the white line, perhaps, over to the other side, but I cant quite make out if it completely makes it over or not, but they're on top of the white line for a period of time." The court then goes on to ultimately determine that "*specifically I'm finding that he does, with his right wheels, drives on top of the white line twice*, so the motion to reconsider is denied." (Emphasis added.)

¶ 21    It is important for us to note that *Mueller* did not become binding precedent on the trial court until its publication on December 13, 2018. All the trial court's findings regarding defendant's lane usage and the credibility of the officers' testimony were made prior to that publication. As such, whether the defendant's vehicle merely touched the dividing line or crossed over into the next lane was, at the time of these proceedings, a distinction without a difference. However, this court was able to view the squad car video and observed defendant's vehicle only

touching the dashed dividing line. The trial court's final finding was that defendant "with his right wheels, drives on top of the white line twice."  Without crossing into the next lane, there exists no improper lane usage to give the officers reasonable suspicion to stop defendant's vehicle. See *Mueller*, ¶ 29. Therefore, per *Mueller*, the trial court's denial of defendant's motion was incorrect as a matter of law and must be reversed.

¶ 22                                    III. CONCLUSION

¶ 23    For the reasons stated, we reverse the judgment of the circuit court of Du Page County.

¶ 24    Reversed.