2020 IL App (2d) 190602-U
No. 2-19-0602
Order filed June 11, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 17-DT-402 |
| LATOYA N. ANDERSON, | ) ) ) | Honorable Philip G. Montgomery, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BRIDGES delivered the judgment of the court.
Justices McLaren and Hutchinson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The trial court properly granted defendant's motion to suppress: where the officer observed defendant driving her car with the tires on the lane dividing line but not crossing it, the officer lacked reasonable grounds to believe she committed improper lane usage, and the officer's contrary belief was unreasonable.

¶ 2    The trial court granted the motion of defendant, Latoya N. Anderson, to suppress evidence resulting from a traffic stop.  Based on evidence that defendant drove on the lane dividing line, but did not cross it, the court held that the arresting officer lacked reasonable grounds to believe that she had committed improper lane usage (ILU) (625 ILCS 5/11-709(a) (West 2016)).  The State

appeals, contending that (1) driving on the lane divider violated the statute, or (2) the officer had a good-faith belief that it did. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Defendant was charged with driving under the influence of alcohol. She filed a motion to suppress evidence. At a hearing on the motion, Northern Illinois University police officer Devon Buckle testified that in the early morning of October 21, 2017, he was driving northbound on Annie Glidden Road when he saw a Jeep Wrangler traveling in the left-hand lane, with both driver's side wheels on the yellow dividing line. A dashcam video corroborated this testimony.

¶ 5     The trial court granted the State's motion for a directed finding. The court found Buckle credible and held that his observation of a vehicle driving with its wheels on the yellow dividing line provided a reasonable basis for a traffic stop.

¶ 6     Defendant moved to reconsider, arguing that under this court's holding in *People v. Mueller*, 2018 IL App (2d) 170863, driving with one's wheels on, but not over, the dividing line did not provide a reasonable basis for a traffic stop. The court allowed the State to present additional evidence. Buckle testified that he pulled defendant over in an area of Annie Glidden Road that was straight and flat. Further, he did not observe any obstructions to warrant defendant's driving on the solid yellow line.

¶ 7     Although the State argued that *Mueller* was distinguishable on its facts, the court granted defendant's motion and suppressed the evidence. The State timely appeals.

¶ 8                                     II. ANALYSIS

¶ 9     On appeal, the State renews its contention that *Mueller* is distinguishable. The State contends that, in *Mueller*, we observed that the defendant was stopped on a road that was hilly and curvy. Thus, occasional drifting from the center of the lane could reasonably be expected, whereas

in this case the road was straight and flat and the officer observed no obstructions that would have made it necessary to drive on the center divider. The State further contends that *Mueller* was wrongly decided and should be overruled. Alternatively, the State argues that Buckle had a good-faith belief that the stop was proper.

¶ 10    In reviewing a trial court's ruling on a motion to suppress, the court's findings of historical fact are reviewed only for clear error, giving due weight to any inferences drawn from those facts by the fact finder, and reversal is warranted only when those findings are against the manifest weight of the evidence. *People v. Hackett*, 2012 IL 111781, ¶ 18. However, we review *de novo* the trial court's ultimate legal ruling whether to suppress the evidence. *Id.*

¶ 11    Because a vehicle stop is a seizure of the vehicle's occupants, a stop is subject to the fourth amendment's reasonableness requirement. *Whren v. United States,* 517 U.S. 806, 809-10 (1996). Generally, a traffic stop is more analogous to a *Terry* investigative stop (see *Terry v. Ohio,* 392 U.S. 1 (1968)) than to a formal arrest. Under *Terry,* a law enforcement officer may conduct a brief, investigative stop of individuals, absent probable cause to arrest, provided the officer has a reasonable, articulable suspicion of criminal activity. *Id.* at 21-22.

¶ 12    Section 11-709(a) of the Illinois Vehicle Code states, "Whenever any roadway has been divided into 2 or more clearly marked lanes for traffic," "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." 625 ILCS 5/11-709(a) (West 2018).

¶ 13    Thus, the question is whether defendant's driving briefly on the lane divider gave officer Buckle a reasonable, articulable suspicion that she was violating the traffic laws. In *Mueller*, we held that improper lane usage requires more than merely touching the lane line. Rather, a vehicle

must completely cross the lane line, into another lane, for the driver to be guilty of improper lane usage. *Mueller*, 2018 IL App (2d) 170863, ¶ 22. We relied on *Hackett*, which held, " '[W]hen a motorist crosses over a lane line and is not driving as nearly as practicable within one lane, the motorist has violated the [ILU] statute.' " *Hackett*, 2012 IL 111781, ¶ 16 (quoting *People v. Smith*, 172 Ill. 2d 289, 297 (1996)); see also *People v. Leyendecker*, 337 Ill. App. 3d 678, 682 (2003) (*Smith* required trial court to consider whether defendant had "crossed over" a lane line). As Buckle testified that defendant's driver's-side wheels touched the lane divider but did not cross it, he lacked a reasonable suspicion to believe that defendant had committed improper lane usage.

¶ 14    The State argues that *Mueller* is distinguishable. The State contends that, in *Mueller*, the road's " 'twists and turns' provided an innocent (and obvious) explanation" for the defendant's brief touches of the lane marker. *Mueller*, 2018 IL App (2d) 170863, ¶ 28. Here, however, Buckle testified that the road was straight and flat. However, the nature of the road was clearly an alternative rationale for our holding in *Mueller*. We began the paragraph, "[i]n any event," and concluded that "even if defendant's multiple lane touches could be considered 'lane deviations,' " the nature of the road provided an explanation for them. *Id.* The holding was that merely touching the lane markers was not a deviation from the lane, regardless of the nature of the road. *Id.* ¶ 22.

¶ 15    The State alternatively contends that *Mueller* was wrongly decided. The State cites cases from other jurisdictions that have reached the opposite conclusion. The State further contends that *Mueller*'s holding leads to the absurd result that two vehicles traveling in opposite directions could occupy the same lane.

¶ 16    The cases the State relies on are not persuasive. In *Kruse v. Commissioner of Public Safety*, 906 N.W.2d 554 (Minn. Ct. App. 2018), the court cited dictionary definitions of "lane" as being " '[a] narrow way or passage between walls, hedges, or fences' and as '[a] strip delineated on a

street or highway for a single line of vehicles' "; and "between" as " '[i]n or through the position or interval separating.' " *Id.* at 558 (quoting *The American Heritage College Dictionary* 136, 779 (4th ed. 2007)). The court concluded from these definitions that a "lane" did not include the boundary markers. The court relied heavily on the definition of "between." However, the relevant portion of the definition of "lane," referring to a portion of a street or highway, does not contain the word between.

¶ 17    In *United States v. Williams*, 945 F. Supp. 2d 665 (E.D. Va. 2013), the defendant's driving was much more erratic than that involved here. An officer observed the defendant's vehicle weave back and forth between the fog line and the center line at least five times. *Id.* at 673. The vehicle touched both lines but only briefly crossed the center line. *Id.* at 668. The federal district court concluded that Virginia's improper-lane-usage statute would define a lane as not including the boundary lines. *Id.* at 672. Arguably, the court did not need to decide that question because the court further concluded that the officer had at least a good-faith belief that the defendant had violated a traffic law and that the erratic driving the officer witnessed gave him a reasonable belief that the defendant was impaired. *Id.* at 674.

¶ 18    In *United States v. Bassols*, 775 F. Supp. 2d 1293 (D. N.M. 2011), the defendant's vehicle veered from the shoulder stripe or fog line to the center line at least twice. Citing a case in which an officer observed the defendant's van " 'weaving from lane line to shoulder line several times, touching three times' " (*id.* at 1299 (quoting *United States v. De La Fuente-Ramos*, 242 F.3d 391, slip op. at *1 (10th Cir 2000) (unpublished table decision)) the court found it "unlikely that the Tenth Circuit would invalidate the stop of a driver who weaves onto and then drives on the solid stripe dividing the lane from the shoulder." *Id.* at 1300. The court further made an "*Erie*-guess" that the New Mexico Supreme Court would rule similarly. *Id.*; see *Erie R. Co. v. Tompkins*, 304

U.S. 64 (1938) (where necessary, federal courts must attempt to ascertain State common law even where State courts have not authoritatively ruled on a question).

¶ 19    Subsequently, in *State v. Siqueiros-Valenzuela*, 2017-NMCA-074, 404 P.3d 782 (N.M. Ct. App. 2017), the court carefully distinguished *Bassols*.  There, as the defendant was passing two semitrailers, her vehicle's tire touched the yellow shoulder line of the left passing lane.  *Id.* ¶ 2. The court noted that *Bassols*, as required by Tenth-Circuit precedent, used a totality-of-the-circumstances approach.  *Id.* ¶¶ 19-20 (citing *Bassols*, 775 F. Supp. at 1303, and *United States v. Alvarado*, 430 F.3d 1305, 1309 (10th Cir. 2005)).  In the case before it, the state court rejected the prosecution's call for a bright-line rule that any touching of a lane boundary violated the statute, finding that such an approach would read the "as nearly as practicable" language out of the statute.[1] *Id*. ¶ 15.

¶ 20    Considering the "totality of the circumstances," the court held that the single touching of the line was reasonably explained by the fact that the defendant was attempting to pass two semitrailers, a maneuver for which "common driving experience advises leaving as much room as possible for safety."  *Id.* ¶ 22.  Those circumstances did not give the arresting officer a reasonable suspicion that the defendant had violated the statute.  *Id.* ¶ 20.  The court specifically declined to decide whether a vehicle had to cross, as opposed to simply touch, a lane marker to violate the statute, as neither party had raised the issue.  *Id.* ¶ 21n.1.

¶ 21    Finally, in *State v. McBroom*, 39 P.3d 226 (Or. App. 2002), the defendant, while rounding a curve, drove on the center line for more than 300 feet.  The court, without analysis or citation of

---

[1] The statute in question, N.M. Stat. Ann., Section 66-7-317(A) (1978) is identical to 625 ILCS 5/11-709(a) (West 2016).

authority, simply held that "the phrase 'within a single lane' does not mean 'on' the lines that mark or divide the lanes." *Id.* 228.

¶ 22    *Stare decisis* expresses the courts' policy of adhering to precedents and not disturbing settled points. *People v. Colon*, 225 Ill. 2d 125, 145 (2007).  Thus, any departure from *stare decisis* must be "specially justified," such that prior decisions should not be overruled absent "good cause" or "compelling reasons."  (Internal quotation marks omitted.).  *Id.* 146.  The holdings of the cases cited by the State are based on different facts, occasionally flawed reasoning, or "guesses" about what state courts might hold.  They do not provide "compelling reasons" to depart from *Mueller* here.

¶ 23    The State insists, however, that continued adherence to *Mueller* will produce "absurd" results.  See *People v. Acevedo*, 275 Ill. App. 3d 420, 426 (1995) (in considering legislative intent, we presume that legislature did not intend absurdity, inconvenience, or injustice).  The State argues that our holding that a lane includes the boundary markers on either side means that two oncoming vehicles could simultaneously occupy the same lane, which would raise obvious safety concerns.

¶ 24    Our holding governs momentary touches of the lane marker.  In the absence of contrary evidence, we are not convinced that drivers will voluntarily travel long distances with their wheels on the lane dividers or, if they do so, that they will fail to observe oncoming vehicles and take appropriate actions to avoid collisions.

¶ 25    This scenario presents no more compelling safety concerns than numerous others that occur regularly on our streets and highways.  Vehicles traveling in the same direction in the same lane at different speeds will inevitably collide unless drivers take appropriate measures.  A vehicle legally turning left will at least briefly occupy the same lane as oncoming traffic.  And vehicles travelling in opposite directions on unmarked streets and roads may legally occupy the same path.

¶ 26 The State alternatively argues that Buckle had a good-faith belief that defendant violated the improper-lane-usage statute. In its opening brief, the State conceded that it did not raise this issue in the trial court. In its reply brief, the State asserts that, while the prosecution "never used the magic phrase 'good faith' in front of the trial court," it nonetheless argued the issue. However, the State does not cite any place in the record where Buckle was asked the basis of his belief that driving on the line violated the statute. Thus, although the trial court generally found Buckle credible, it did not have the opportunity to assess his credibility on this particular point or to rule on the reasonableness of that belief. Further, because the State did not make a record in the trial court, we have no opportunity to rule on the issue either.

¶ 27 In any event, the stop was not objectively reasonable. Although *Mueller* had not been decided when the stop here occurred, *Mueller* held that section 11-709's plain language provided that a lane includes the boundary marker. *Mueller*, 2018 IL App (2d) 170863, ¶ 21. We cited, *inter alia*, *Hackett* and *Leyendecker* for that conclusion. In *People v. Haywood*, 407 Ill. App. 3d 540 (2011), we held that an officer's mistaken belief that a defendant's conduct violated a statute did not "justify the stop at its inception." *Id.* at 547. Because the stop was objectively unreasonable, the officer's good-faith belief that the stop was justified could not save it. *Id.* Here, too, because defendant's intermittent driving on the line did not violate the statute, the officer's good-faith belief in the propriety of the stop is irrelevant.

¶ 28                                        III. CONCLUSION

¶ 29 The judgment of the circuit court of De Kalb County is affirmed.

¶ 30 Affirmed.